### GITHENS et al. v. SHIFFLER et al.

(District Court, M. D. Pennsylvania. January 3, 1902.)

#### No. 8.

1. BANKRUPTCY—ACTS OF BANKRUPTCY—FRAUDULENT CONVEYANCE.
   A conveyance or transfer of property with intent to hinder, delay, or defraud creditors, which is made an act of bankruptcy by Bankr. Act 1898, § 3a (1), is the same as that made voidable by the common law, and its fraudulent character is to be determined by the same tests.

2. SAME.
   A sale of property by an insolvent for a full consideration, which was paid in cash, is not a fraudulent transfer which constitutes an act of bankruptcy under Bankr. Act 1898, § 3a (1), although there was an intention on the part of the seller to use the proceeds in paying some creditors rather than others, which intention was carried out, nor although a small part of the proceeds was applied to the personal use of the seller, where the sale was not in fact made for the purpose of placing the property beyond the reach of creditors.

3. SAME—INTENT TO PREFER.
   An intent to prefer is not to be confounded with an intent to defraud, nor a preferential transfer with a fraudulent one. While, therefore, a

man may not connive with others to get his property out of the way by sale or otherwise, yet a fair and open disposition of it on a full consideration cannot be given a fraudulent character, although it may incidentally have the effect of leaving nothing which creditors can get hold of, and even though the debtor do this to meet some of his obligations, rather than others.

In Bankruptcy. On rule for a new trial after verdict of a jury on the question of the commission of the act of bankruptcy alleged.

A. F. Salzer, for plaintiffs.

Bassler Boyer, for defendants.

ARCHBALD, District Judge. The act of bankruptcy charged in this case is the transfer of property with intent to hinder, delay, and defraud creditors. The defendants, C. W. Shiffler & Bro., were engaged last spring in the grocery business at Lebanon, Pa., and on April 30th, after some preceding negotiations, sold out their stock of merchandise to Light Bros. for $1,166.42. They were indebted at the time to sundry parties, and among others to the plaintiffs, Githens, Rexsamer & Co., on current bills to the amount of $581, and were insolvent. While negotiations for the sale were in progress, Col. Seltzer, the plaintiffs' attorney, called upon J. H. Shiffler, one of the firm, and demanded payment, and was assured that if he would not make them any trouble by suit, which might interfere with the sale, they would pay him out of the proceeds. After the sale was consummated, however, the defendants not having kept their promise, he called upon them again, complained of his treatment, and asked why they had not done as they agreed, to which they replied that they had paid others who had done them greater favors. The fact was that out of the money realized from the sale they paid $650, the balance due on a note for borrowed money, on which the estate of their father, Levi Shiffler, was surety, and $150 back rent on the store. They also set aside $100 for the support of their aged mother, and kept the rest—some $266—for their own support until they could get other work to do. The sale to Light Bros. was an open and apparently fair one, and was made at the solicitation of that firm, and not of the defendants. The price was fixed by an appraisement, which was closely watched by both parties, and the amount received —$1,166.42—was all the stock was worth, and was paid in cash at the time possession was delivered. The defendants deny that there was any purpose to hinder, delay, or defraud creditors, and, on the contrary, declare that they sold simply because they could not keep up the stock in such shape as to hold customers. The jury have found to the contrary of this,—that the sale was fraudulent,—and the question is whether the verdict is warranted by the evidence.

The transfer of property with intent to hinder, delay, and defraud creditors, which is made an act of bankruptcy by the statute, is none other than the like fraudulent transfer made void by St. 13 Eliz., which is itself simply declaratory of the common law. That which, therefore, according to the established course of authority, constituted a fraudulent transfer at the time of the passage of the bankruptcy act, may be regarded as intended to be covered by that act,

and nothing more. As long ago as Copis v. Middleton, 2 Madd. 410–430, it was said, "The statute [13 Eliz.] does not deprive a man of the power of selling his estate, or doing what he pleases with the purchase money;" and in Darvill v. Terry, 6 Hurl. & N. 807, relying on Wood v. Dixie, 7 Q. B. 892, it was decided that a bill of sale by way of mortgage of personal chattels, if executed as security for money actually lent, is not fraudulent and void within St. 13 Eliz., though its object is to defeat the expected execution of a judgment creditor. It was further held in Ex parte Stubbins, 17 Ch. Div. 58,—quite in line with the case in hand,—that a sale of goods for cash, the seller intending to use the purchase money in making a voluntary payment, was not a fraudulent transfer within the meaning of the English bankruptcy act. "But it was pressed upon us," says James, L. J., "that the transfer of goods to a purchaser for value with the view of using the purchase money for a voluntary preference, the purchaser knowing this intention, was a fraudulent conveying away or transfer within the meaning of the sixth section of the [bankruptcy] act [32 & 33 Vict. c. 71]. It appears to me that that view cannot be sustained. In truth, a mere voluntary transfer, impeachable only on the ground that it is a preference to a particular creditor, has never been held to be in itself a fraud, or an act of bankruptcy. It may be impeached on the ground that it is voluntary, but it is impossible, as it appears to me, to hold that a mere voluntary transfer is of itself an act of fraud; and, if this is not fraudulent within any principle of law, it would be equally impossible to say that a sale becomes fraudulent because there is an intention in the mind of the vendor to use the purchase money for the purpose of making a voluntary preference, and the purchaser knows that that is the motive of the sale and the intention of the vendor with reference to the proceeds of the sale. It appears to me that it would be an extravagant extension of the doctrine of fraud on the bankrupt law to hold that such a sale, under such circumstances, is of itself a fraudulent act, or an act of bankruptcy." Taking this to be the law, the present verdict cannot be sustained. It is no doubt true that, even though the sale of their property by the defendants was for a full consideration, if really made for the purpose of putting it out of the reach of creditors it was fraudulent (Ferris v. Irons, 83 Pa. 179); and we may take into consideration as well that which occurred after as that which preceded' the transaction in passing upon it. Yet, even so, there is nothing in the case to give it any such fraudulent character. The most that can be said against it is that the defendants used the proceeds of the sale to prefer certain of their creditors, and to meet their own personal needs, instead of distributing it pro rata among all whom they owed. But, so far as they paid some debts to the exclusion of others, they were strictly within the authority given them by the common law, however it may be to the contrary in bankruptcy; and, while the payment of the back rent, or of the debt for which their father's estate was surety, was undoubtedly a preference which the bankrupt law would avoid, it cannot be said to establish an intent through the medium of the sale to hinder, delay, or defraud their other creditors, even though they had such a preference in mind from the beginning

(Ex parte Stubbins, 17 Ch. Div. 58).; or, in other words, an intent to prefer is not to be confounded with an intent to defraud, nor a preferential transfer with a fraudulent one. Nor can a fraudulent intent be made out of the setting aside of $100 for the support of their mother, or the retention of two hundred and sixty-odd dollars to meet their own personal needs. The one was not only a filial, but a legal, obligation, if, as we assume, their mother had need of it. Nor were they bound to strip themselves of their last dollar, and go upon the town, under penalty of being charged with a dishonest or covinous purpose. Even, therefore, if we had a right to infer that from the beginning they contemplated all that was subsequently done,—which is quite a stretch of inference,—it cannot be regarded as a fraudulent withdrawal of their property out of the reach of creditors to sell with that in view; otherwise any disposition by an insolvent debtor would be open to that charge if every dollar derived from it was not turned over impartially to his creditors. This is not the standard of the law, however it may be of morals or ideal honesty; and, while a man may not connive with others to get his property out of the way by sale or otherwise, yet a fair and open disposition of it on a full consideration cannot be given any such character although it may incidentally have the effect of leaving nothing which creditors can get hold of, and even though the debtor do this to meet some of his obligations rather than others.

The only thing that remains is the fact that the defendants did not carry out their promise to pay the plaintiffs out of the proceeds of the sale. This, of course, would have been as much of a preference, and as objectionable to the bankrupt law, which the plaintiffs seek to invoke, as the payment of the rent or of the debt for which their father was surety. But, passing by this feature of it, there is nothing in the mere failure to keep their promise that can be laid hold of to make out a fraudulent motive in the transaction. The negotiations for the sale were then in progress, and could not, therefore, have been gotten up by the defendants, nor carried through by them, to get their property out of the way under pressure of this particular claim.

All this is said, of course, with reference to the act of bankruptcy alleged in the petition. Had a transfer of property with intent to prefer been charged, we should have had a very different question to deal with; but, as the case stands, there is nothing to warrant the conclusion that the sale was not an honest one. The money which the defendants received from it was their own in law, and the fact that they exercised their proprietary rights in disposing of it afforded no evidence of a fraudulent purpose.

The rule is made absolute, and a new trial awarded.