In re BELKNAP.

(District Court, E. D. Pennsylvania. May 2, 1904.)

No. 1,773.

1. ACTS OF BANKRUPTCY—PREFERENCE—JUDICIAL PROCEEDINGS.

Where a landlord's levy on the goods of his tenant under a distress warrant did not operate as a preference, as defined by Bankr. Act July 1, 1898, c. 541, § 60, cl. "a," 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446], amended by Act Cong. Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416], the failure of the bankrupt to procure the release of such levy did not constitute an act of bankruptcy.

2. SAME.

Where counsel for one of the petitioning creditors of a bankrupt threatened him with criminal proceedings unless the debt due was immediately paid, whereupon the bankrupt sold certain property for nearly its full

value to raise money for the purpose at a time when his entire stock was worth less than his entire indebtedness, but the creditor afterwards refused to receive the money, and instituted criminal proceedings, such sale by the bankrupt did not constitute an act of bankruptcy within Bankr. Act 1898, c. 541, § 3a, subds. 1, 2, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], providing that the conveyance of property with intent to hinder, delay, or defraud the bankrupt's creditors, or a transfer thereof while insolvent with intent to prefer some creditors over others, shall constitute acts of bankruptcy.

3. SAME—REMOVAL OF PROPERTY.

Where a creditor of a bankrupt removed certain goods from the bankrupt's store during the bankrupt's absence, and retained possession thereof over the bankrupt's protest, the bankrupt's failure to take legal proceedings to recover possession of the goods, in the absence of evidence of collusion, did not constitute an act of bankruptcy within Bankr. Act July 1, 1898, c. 541, § 3a, subd. 1, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], providing that the removal of any part of a bankrupt's property with his permission, with intent to hinder, delay, and defraud creditors, shall constitute an act of bankruptcy.

Isaac Hassler and J. Hector McNeal, for petitioning creditors.
John R. K. Scott and E. O. Michener, for alleged bankrupt.

J. B. McPHERSON, District Judge. This petition was filed November 4, 1903, and sets forth as the acts of bankruptcy that Charles F. Belknap did, "on the 21st day of October, 1903, suffer and permit a levy to be made at the instance of the Fidelity Trust Company, one of his creditors, upon certain of his goods and chattels at 333 Chestnut street, which said goods will be exposed for sale under said levy at said premises on November 4, 1903, thereby suffering and permitting, while insolvent, a creditor to obtain a preference through legal proceedings, and not having, at least five days before the sale or final disposition of any property affected by such preference, vacated or discharged same; (2) that said Belknap has within four months last past conveyed, transferred, concealed, and removed part of his property with intent to hinder, delay, and defraud his creditors, in that he has removed from his premises almost all of his effects, and concealed or disposed of the same for the purpose of hindering, delaying, and defrauding his creditors, and with said intent." The testimony shows that the first act of bankruptcy thus set forth was not a levy under execution, but was a distraint of goods under a landlord's warrant, and the question is presented whether such a levy is a "legal proceeding" within the meaning of section 3a (3), Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422]. I do not think it necessary to decide the question, however, because it is clear to my mind that no preference was obtained by the distress. A preference is described by Act July 1, 1898, c. 541, § 60, cl. "a," 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446], as amended in Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 [U. S. Comp. St. Supp. 1903, p. 416], in the following language:

"A person shall be deemed to have given a preference, if, being insolvent, he has within four months before the filing of the petition, or after the filing of the petition and before adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable anyone of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Passing without decision the further question whether a "judgment" is to be so interpreted as to include a distress for rent, it is enough to say, I think, that, even if this be true, the effect of the distress did not enable the landlord to obtain a greater percentage of his debt than any other creditor of the same class. There is no other creditor of the same class, for there is but a single landlord; and, as the claim for rent had priority over the claims of the general creditors, the distress did not enable the landlord to obtain a greater percentage of his debt. The rent was entitled to be paid first out of the proceeds of the very property upon which the distress was levied, whenever it should be sold by the trustee, and therefore the distress gave no new right, but merely hastened the time of payment. When he distrains, a landlord is simply enforcing the priority which is given to him by law, and in no way gains any improper advantage over other creditors by thus converting the property into money more speedily. He may, of course, be restrained from selling, if there are good reasons for such an order; I am supposing that a sale has actually taken place.

The second act of bankruptcy is under section 3a (1) 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], and the facts with reference to this charge are found by the referee as follows:

"Counsel for one of the petitioning creditors went to Belknap, and threatened him with criminal proceedings unless the debt due his client was immediately paid. Belknap then sold certain property to raise money for this purpose, but the creditor afterwards refused to receive the money, and instituted criminal proceedings. Belknap denies having sacrificed goods for that purpose, saying that he obtained for them not much less than their full value, but admitted that at the time his stock of goods was worth less than $25,000, the amount of his indebtedness."

As it seems to me, this transaction cannot be regarded as being the act of bankruptcy described in section 3a (1). The intent to defraud is essential under this clause, and differs from the intent to prefer, which is essential to the act of bankruptcy described in section 3a (2). The proper distinction should be preserved between these two clauses. The subject has been so satisfactorily discussed by Judge Archbald, of the Middle District of Pennsylvania, in Githens v. Shiffler, 7 Am. Bankr. Rep. 453, 112 Fed. 505, that I content myself with referring to his opinion as a clear vindication of the conclusion that the facts here do not make out an intent to defraud. See, also, Re Mingo Valley Creamery Ass'n, 4 Am. Bankr. Rep. 67, 100 Fed. 282. It is urged that Re Morgan, 4 Am. Bankr. Rep. 402, 101 Fed. 982, is an authority in support of the opposite view, and it is true that some language in the opinion will bear that construction. But an examination of the case discloses a completed preference in favor of two creditors, and it is certainly reasonable to suppose that the court was speaking with reference to the actual facts. But, even if I should be mistaken in this, Githens v. Shiffler is of more weight in this circuit.

It also appeared that another creditor, named Wright, whose debt was about $6,000, came to Belknap's place of business upon one occasion, and in Belknap's absence took about $1,200 of goods, and carried them away to his own store, and retained possession of them in spite of Belknap's protest. Belknap took no legal proceedings against

Wright to recover possession of the goods, but the referee has found that there was no evidence of collusion between Belknap and Wright, and he declined to hold that upon these facts the further act of bankruptcy described in section 3a (1) as permitting to be removed any part of the bankrupt's property with intent to hinder, delay, or defraud his creditors had been committed. Another support to his ruling may be found in the fact that the petition does not aver any such act of bankruptcy; and therefore, both for the reason given by the referee—with whose finding of fact upon this subject I agree—and also for the reason that the petition is silent upon the subject, the referee's decision was undoubtedly correct.

The exceptions to his report are overruled, and, in accordance with his recommendation, the petition is dismissed, at the costs of the petitioning creditors.