### In re LOUIS J. BERGDOLL MOTOR CO.

(District Court, E. D. Pennsylvania. July 23, 1915.)

#### No. 4742.

BANKRUPTCY ⊂⊃164—PREFERENTIAL PAYMENTS—RENT—"PREFERENCE."

Payments made by an insolvent to his landlord within four months of his adjudication in bankruptcy, and applied by the landlord, not to rent for the current year, but to rent in arrears, constitutes a "preference," since as to such rent the landlord is an ordinary creditor merely.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 267; Dec. Dig. ⊂⊃164.

For other definitions, see Words and Phrases, First and Second Series, Preference.]

In Bankruptcy. In the matter of the Louis J. Bergdoll Motor Company, bankrupt. On petition of the North Broad Street Realty Company to review a referee's order deducting certain payments as being preferential from the amount allowed petitioner as rent. Order affirmed, and petition dismissed.

John Weaver, of Philadelphia, Pa., for claimant.
Joseph W. Catherine, of Philadelphia, Pa., for trustee.

THOMPSON, District Judge. The petitioner, the North Broad Street Realty Company, filed a proof of claim as landlord for $11,-687.32 for one year's rent as entitled to priority of payment. There was other rent in arrears, for which a claim was filed. A payment of $1,500 on account of rent had been made to the petitioner in March, 1913, within four months of the date of adjudication in bankruptcy, April 11, 1913. Evidence was taken before the referee, from which he found this payment to be preferential, and ordered it deducted from the amount for which priority was claimed. The case comes before the court upon the petition of the Realty Company for review of this order of the referee. The opinion of the referee (Richard S. Hunter, Esq.), as it pertains to the present controversy, is as follows:

---

"This brings the referee to the consideration of the second question, as to the payment of $1,500 to the North Broad Street Realty Company on March 12, 1913.

"First. Was this payment of $1,500 made under circumstances which should have put the claimant upon an inquiry which would have informed it of the insolvent position of the company? As to the question of fact the referee has no difficulty. The payment was made five days before the petition in bankruptcy was filed, at the same time with payments to Erwin R. Bergdoll for a large amount, and to the Charles A. Bergdoll Coal Company and the Bergdoll Machine Company for smaller sums, while accounts of longer standing remained unpaid. Louis J. Bergdoll, as has been recited, was not only the president of the Louis J. Bergdoll Motor Company, but practically the only stockholder thereof, and the nominal officers of this company acted entirely at his dictation. The bankrupt company was organized under the laws of Pennsylvania, on March 18, 1912; all of its shares, except 2, being issued to Louis J. Bergdoll, who was elected president of the company. On January 8, 1913, the capital stock of the company was transferred: To Erwin R. Bergdoll, 2,998 shares; to Charles A. Bergdoll, 1 share; and to Grover C. Bergdoll, 1 share—the total consideration paid by Erwin R. Bergdoll being $1. The annual meeting was held January 16, 1913. Erwin R. Bergdoll and Grover C. Bergdoll were elected directors for the ensuing year, and Erwin R. Bergdoll thereafter elected president. The merchandise, machinery, tools, and equipment were carried on the books at their original cost; no reduction being made for depreciation. On March 5, 1913, the two shares of stock held by Charles and Grover Bergdoll were transferred to Erwin R. Bergdoll. On March 6, 1913, Erwin R. Bergdoll transferred 2,997 shares of stock to his mother, Emma C. Bergdoll, 1 share to Joseph M. Hubert, 1 share to E. J. Teague, and 1 share to William Ruhland. The next day a special meeting was held, when the Bergdolls resigned, and Hubert, Teague, and Ruhland were elected in their places. Hubert was a bookkeeper at the Bergdoll Brewing Company, Teague was a canvasser in the employ of G. W. Todd Company, and Ruhland was a grocery clerk. None of these officers knew that they had been elected until after the elections had been held. No meetings of stockholders or board of directors were held subsequent to the election. On March 8th and 9th, motor cars in the course of completion, and motor parts, to the value of $31,639.25, were transferred from the bankrupt company's plant at Sixteenth and Callowhill streets to the Bergdoll Machine Company, then owned by Erwin R. Bergdoll. This transfer was made without authority of the board of directors, and without the knowledge of Hubert, Teague, or Ruhland. The company was being pressed by its creditors. The accounts receivable carried on the books were of the nominal value of $58,000; the value of stock, tools, machinery, and fixtures, as sold by the receiver, was $42,613; the cash deposited with the government $6,250; and the cash on hand, $2,617.12. Even upon the extreme assumption that all the accounts receivable were good and collectible, the total of assets is slightly in excess of $100,000. The liabilities of the company, as shown by the proofs of claim filed with the referee, amounted to about $250,000. In addition to these facts, the claimant knew that the motor company was in arrears for nearly two years' rent, that the coal to heat the building was supplied by the claimant, who was the creditor of the bankrupt company for this heat for over $1,000, and that the claimant had paid the Philadelphia Consistory the sum of $1,000 to prevent an execution on a judgment of $5,000 obtained by the Consistory against the Motor Company. These facts are sufficient to warrant the finding that, when the said sum of $1,500 was paid to the company, the claimant knew, or had reasonable cause to believe, that it was insolvent.

"Second. It is urged upon the referee, however, that even if the payment was made with the knowledge on the payee's part of the insolvency of the company, nevertheless it is not a preference, because paid to a landlord, who was a creditor having priority, and whose leasing of the premises was a constantly accruing consideration. Counsel for the claimant cited In re Barrett, 6 Am. Bankr. Rep. 199, a referee's opinion in the Southern district of New York, who decided that the acceptance of a payment of rent within four months of the tenant's bankruptcy was not the acceptance of a preference,

because there was no transfer of property or payment on account; but upon the payment of each installment of rent the transaction between the debtor and the creditor was closed. That referee also decided that a preference was only obtained, under section 60 of the act (Act July 1, 1898, c. 541, 30 Stat. 562 [Comp. St. 1913, § 9644]), by an act of the bankrupt enabling one of his creditors to obtain a greater percentage of his debt than any other of the same class, and that, the landlord being in a class by himself, the transaction was not a preference. No decision in this case by the judges is reported, and the case has been questioned by Remington and other text-writers; but as regards current rent it has the sanction of In re Belknap (D. C.) 12 Am. Bankr. Rep. 326, 129 Fed. 646, a case arising in this district, where there was a distraint of goods under a landlord's warrant, and the tenant's failure to procure a release of a levy thereunder was held not to constitute an act of bankruptcy. 'It is clear to my mind,' says Judge McPherson, 'that no preference was obtained by the distress.' Then, after quoting section 60 as amended, he says: 'The effect of the distress did not enable the landlord to obtain a greater percentage of his debt than any other creditor of the same class. There is no other creditor of the same class, for there is but a single landlord.' See, also, In re Feuerlicht, 8 Am. Bankr. Rep. 550, and Livingston v. Heineman, 10 Am. Bankr. Rep. 39, 120 Fed. 786, 57 C. C. A. 154. Had the payment been for the current year, these decisions would be conclusive; but the landlord in this case, instead of applying the $1,500 to the current rent, applied it to the payment of back rent, upon which he would have had only the right of an ordinary creditor. This he may not do, for as regards this back rent he was an ordinary creditor, and his application of the payment is a preference, giving him a greater percentage of his debt than other creditors of the same class. See In re Pearson (D. C.) 2 Am. Bankr. Rep. 482, 95 Fed. 425, which is directly in point, and In re Riddle's Sons (D. C.) 10 Am. Bankr. Rep. 204, 122 Fed. 559. Even the payment of current rent may be used as a device for effecting a preference. In re Lange (D. C.) 3 Am. Bankr. Rep. 231, 97 Fed. 197.

"The referee finds that the payment of this $1,500, as applied to rent not within the current year, was preferential, and that this amount must be deducted from the priority claim for rent. The referee states the indebtedness having priority as follows:

One year's rent from April 1, 1912, to March 31, 1913.........$11,687 32
Paid on account................................$9,383 85
Preferential payment........................... 1,500 00    10,883 85
                                                            ―――――――――
    Balance due to claimant.............................$   803 47 "

After an examination of the testimony taken before the referee, I see no reason to disturb his findings of fact, and I entirely agree with his conclusions of law. The referee has clearly stated the distinction between the present case and that of In re Belknap, decided by Judge McPherson, and reported in (D. C.) 12 Am. Bankr. Rep. 326, 129 Fed. 646, and I see no occasion to add anything to the careful reasoning in his opinion.

It is ordered that the petition be dismissed, and the order of the referee affirmed.