JOHNSON v. BARRETT et al. (two cases).

(District Court, N. D. Georgia. October 9, 1916.)

Nos. 73, 74.

1. BANKRUPTCY ⬢⟿180—FRAUDULENT TRANSFERS—INTENT—EVIDENCE.

To constitute a fraudulent conveyance, voidable under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. 1913, § 9651), there must have been an actual intent to hinder, delay, or defraud creditors, and the measure of proof required to establish such intent is the same that would be required to set aside a conveyance as fraudulent against creditors at common law. Evidence which only justifies a suspicion of fraud is not sufficient.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 252, 253; Dec. Dig. ⬢⟿180.]

2. BANKRUPTCY ⬢⟿184(2)—PREFERENCES—TRANSFERS OF PROPERTY—RECORDING LAWS.

A state statute requiring conveyances of real estate to be recorded to render them valid against subsequent purchasers or incumbrancers in good faith without notice, but under which they are valid without recording as against general creditors of the grantor, is not a law requiring them to be recorded, within the meaning of Bankr. Act 1898, § 60a, as amended by Act Feb. 5, 1903, c. 487, § 13, 32 Stat. 799 (Comp. St. 1913, § 9644), and for the purposes of the act a conveyance in such state is effective from its date.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 276; Dec. Dig. ⬢⟿184(2).]

In Equity. Suit by A. A. Johnson, trustee in bankruptcy of Elmo L. Barrett, against Elmo L. Barrett, and others. Decree for defendants.

John M. Slaton and J. H. Porter, both of Atlanta, Ga., for complainant.

A. C. Wheeler, of Gainesville, Ga., and I. L. Oakes, of Lawrenceville, Ga., for defendants.

NEWMAN, District Judge. The testimony in these two cases, taken before me, has all been written out, and the testimony of Mrs. F. S. Barrett and J. T. Chamlee, which was taken by consent by a commissioner since the last hearing before me in June, has been filed, and is now before the court.

After considering all of this evidence carefully, it is perfectly clear to me that there is no case whatever made against Mrs. F. S. Barrett, or as to the lot conveyed by her son, Elmo L. Barrett, to her. The evidence shows, I think satisfactorily, that the Southern Oak Leather Company was indebted to Mrs. Barrett in the sum of $500, and Elmo L. Barrett was indebted to her individually in the sum of $150 or $200. Elmo L. Barrett took up the debt, or assumed the debt, due by the Southern Oak Leather Company to his mother in the year 1913, and conveyed the house and lot to her in consideration of the debt, and she accepted the real estate for the debt.

I might add that it seems to me perfectly clear that she put the money she received from Harrison into the hands of Mr. Newton,

⬢⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

cashier of the Citizens' Bank of Gainesville, and that he recently paid her back the money. So that, without any hesitation, the transaction as between Mrs. F. S. Barrett, the mother, and Elmo L. Barrett, must be considered as a legal and valid transaction, and there is no possible chance of recovery here.

As to the other matter, the property transferred by Elmo L. Barrett to his father, F. S. Barrett, there are some circumstances which throw more doubt around that; but these circumstances are slight, and are insufficient in my judgment to justify a recovery from him by the trustee.

The note introduced in evidence, given by Elmo L. Barrett to F. S. Barrett, has been criticized by counsel for the plaintiff here, and, as I understand it, it is urged that the court should hold that there is evidence sufficient to show that it was made after the time it bears date. The paper is dated November 15, 1902, and the figure "2" is evidently made over what was first a figure "3," which would make it November 15, 1903. As I understand the contention, it is that it was dated back, that it was made some time after the date it purports to have been written, and in thus dating it when made it was first dated 1903, and it was then thought that would not do, and it was changed to 1902.

There is suspicion aroused by the looks of this paper, undoubtedly; but I do not think it is sufficient to justify a recovery without a stronger case otherwise than is made here. Strong reliance was placed upon the fact that about the time or just before the Southern Oak Leather Company was placed in bankruptcy, and not very long before Elmo L. Barrett himself became a bankrupt, certain papers were witnessed by Letson, justice of the peace, who testifies that they were folded back in such a way that he did not see the dates. He does not know anything at all about what the papers were, and says they might have been deeds, or, as I understand him, might have been bonds for title, he does not know. Elmo L. Barrett testified positively that the deed was made and that it was witnessed long before that time, he says in January, 1913, as I understand it, and that it was delivered to his father F. S. Barrett in the March following.

[1] It would be the merest inference, and arrived at, so far as I can see, only upon suspicion, to decide that the papers witnessed by Letson, justice of the peace, in the latter part of 1914, were the deeds in question.

Another thing to which weight is attached by the plaintiff is the testimony by A. C. Harrison as to the facts connected with his purchase of the property from F. S. Barrett, and particularly as to the money he says passed between them. Undoubtedly this testimony may be very justly criticized, and if the case depended entirely upon Harrison getting a good title from F. S. Barrett I would be very much inclined to think the plaintiff could recover as to that property; but it seems to me, if F. S. Barrett got a good title from his son, Elmo L. Barrett, it is immaterial whether his transaction with Harrison was foolish and fraudulent or not. If the transaction between Elmo L. Barrett and F. S. Barrett was a valid and legal transaction as between them, it would not seem to make any difference if F. S. Barrett after-

237 F.—8

wards for some reason, even if, under foolish advice, he was frightened about his title to the property, should have made a transfer of it to Harrison for the purpose of strengthening his title, as he thought.

Having concluded, as I feel I must, that the transaction between the two Barretts, Elmo L. and F. S. Barrett, was a binding transaction, and was not made simply for the purpose of hindering, delaying, and defrauding creditors, but was made without any fraudulent intent as to creditors, and to pay his father, as he says, what he must undoubtedly from this evidence have owed him, it necessarily follows that the old gentleman would have a right to do what he pleased with it thereafter, and, however suspicious the transfer to Harrison might appear, it would give no ground for recovery here.

The law covering this case is well settled in Coder v. Arts, 213 U. S. 223, 29 Sup. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008. In the opinion in that case by Mr. Justice Day this is said:

"A consideration of the provisions of the bankruptcy law as to preferences and conveyances shows that there is a wide difference between the two, notwithstanding they are sometimes spoken of in such a way as to confuse the one with the other. A preference, if it have the effect prescribed in section 60, enabling one creditor to obtain a greater proportion of the estate than others of the same class, is not necessarily fraudulent. Preferences are set aside when made within four months, with a view of obtaining an equal distribution of the estate, and in such cases it is only essential to show a transfer by an insolvent debtor to one who himself or by his agent knew of the intention to create a preference. In construing the Bankruptcy Act this distinction must be kept constantly in mind. As was said in Githens v. Shiffler [D. C.] 112 Fed. 505: 'An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one.' In In re Maher, 144 Fed. [D. C.] 503–509, it was well said by the District Court of Massachusetts: 'In a preferential transfer the fraud is constructive or technical, consisting in the infraction of that rule of equal distribution among all creditors, which it is the policy of the law to enforce when all cannot be fully paid. In a fraudulent transfer the fraud is actual; the bankrupt has secured an advantage for himself out of what in law should belong to his creditors, and not to him.'

"Is the conveyance voidable under subdivision 'e,' § 67? Under the terms of that subdivision a fraudulent conveyance is made void as to creditors, except as to grantees in good faith and for a present fair consideration. The provision saving conveyances to purchasers in good faith and for a present fair consideration prevents such conveyances from being declared void by the act, although they have been made by the bankrupt with intent on his part to hinder, delay or defraud his creditors. But the act does not dispense with the necessity of showing, to avoid a conveyance or transfer under section 67e, that the bankrupt had the actual intent to hinder, delay, or defraud creditors. What is meant when it is required that such conveyances, in order to be set aside, shall be made with the intent on the bankrupt's part to hinder, delay, or defraud creditors? This form of expression is familiar to the law of fraudulent conveyances, and was used at the common law, and in the statute of Elizabeth, and has always been held to require, in order to invalidate a conveyance, that there shall be actual fraud; and it makes no difference that the conveyance was made upon a valuable consideration, if made for the purpose of hindering, delaying, or defrauding creditors. The question of fraud depends upon the motive. Kerr on Fraud and Mistake, 196, 201. The mere fact that one creditor was preferred over another, or that the conveyance might have the effect to secure one creditor and deprive others of the means of obtaining payment, was not sufficient to avoid a conveyance; but it was uniformly recognized that, acting in good faith, a debtor might thus prefer one or more creditors. Stewart et al. v. Dunham et al., 115 U. S. 61 [5 Sup. Ct.

1163, 29 L. Ed. 329]; Huntley v. Kingman, 152 U. S. 527, [14 Sup. Ct. 688, 38 L. Ed. 540.]

"We are of opinion that Congress, in enacting section 67e, and using the terms 'to hinder, delay, or defraud creditors,' intended to adopt them in their well-known meaning as being aimed at conveyances intended to defraud. In section 60 merely preferential transfers are defined, and the terms on which they may be set aside are provided; in section 67e, transfers fraudulent under the well·recognized principles of the common law and the statute of Elizabeth are invalidated. The same terms are used in section 3, subdivision 1 [Comp. St. 1913, § 9587], in which it is made an act of bankruptcy to transfer property with intent to hinder, delay, or defraud creditors. Such transfers have been held to be only those which are actually fraudulent. It was so held in Lansing Boiler & Engine Works v. Ryerson, [128] Fed. 701 [63 C. C. A. 53]. Considering the language, which is identical with that in section 67e, the Circuit Court of Appeals, speaking through Judge Severens, said: 'The language of subsection 1 of section 3 is the familiar language of statutes against conveyances fraudulent ·as against creditors, and ·we think there can be no doubt that Congress intended the words employed should have the same construction and effect as have for a long period of time been attributed to those words. Githens v. Shiffler [D. C.] 112 Fed. 505. And, so construed, the test of the conveyance intended by subsection 1 of section 3 is that of the bona fides of .the transfer. Loveland's Bankr. (2d Ed.) § 51. For it is the well-settled law that a conveyance made in good faith, whether for an antecedent or a present consideration, is not forbidden by such statutes, notwithstanding that the effect may be that it hinder or delay creditors by removing from their reach assets of the debtor.'

"And to the same effect is the decision of the Circuit Court of Appeals of the Second Circuit in In re Bloch, 142 Fed. 674 [677, 74 C. C. A. 250], in which that court had occasion to consider the meaning of section 67e, as applicable to section 57g of the act, as amended in 1903 [Comp. St. 1913, § 9641], requiring the surrender of preferences voidable under section 60, subdivision 'b,' or of fraudulent conveyances voidable under section 67e, in order to make proof of a claim, and in considering section 67e, Judge Townsend, speaking for the court, said: 'We think Congress must be presumed to have intended by the introduction of section 67e to require a surrender only of such transfers as would have been fraudulent at common law, or would constitute an act of bankruptcy under section 3 of the act. In Githens v. Shiffler, supra, the · bankrupt used the proceeds of a sale of property to prefer certain creditors. The court, upon a review of the authorities, held that section 3 applies only to those transfers which, according to the established course of authority, constituted a fraudulent transfer at the time of the passage of the Bankruptcy Act, and held that a mere preferential transfer, as distinguished from a fraudulent one, was not an act in bankruptcy under said section 3. The question as to whether a transfer is made with intent to hinder, delay, or defraud depends upon whether the act done is a bona fide transaction. Loveland on Bankruptcy, 391; Cadegan v. Kennet, 2 Cowper, 435; Lansing Boiler & Engine Works v. Ryerson, supra. An intent to defraud is the test of the right to avoid a transfer under section 67e.'

"In dealing with this question this court said, in Thompson v. Fairbanks, 196 U. S. 516 [25 Sup. Ct. 306, 49 L. Ed. 577]: 'There is no finding that in parting with the possession of the property the mortgagor had any purpose of hindering, delaying, or defrauding his creditors or any of them. Without a finding to the effect that there was an intent to defraud, there was no invalid transfer of the property under the provisions of section 67e, of the bankruptcy law.' That it is essential to show actual fraud, in order to invalidate conveyances under 67e, is the view of the text-writers upon this subject. Loveland on Bankruptcy (3d Ed.) 476; Collier on Bankruptcy (6th Ed.) 562; 1 Remington on Bankruptcy, § 1498. ·

"We do not agree, if such is to be held the effect of the third conclusion of law in the finding of the Court of Appeals, that the giving of the mortgage and its effect upon other creditors could not be considered as an item of evidence in determining the question of fraud. What we hold is that, to constitute a conveyance voidable under section 67e, actual fraud must be shown."

The case as presented—and strongly presented—for the trustee makes, at the most, a suspicion of wrongdoing in these transactions; hardly a suspicion as to Mrs. Barrett, the mother of the bankrupt, but at the most only a suspicion. The testimony of all three of the Barretts, the father, the mother, and Elmo L. Barrett, the son and the bankrupt, shows that these papers were all executed and delivered about 18 months before the bankruptcy of the Southern Oak Leather Company, and more than that before the personal and individual bankruptcy of Elmo L. Barrett.

[2] I do not remember that there was much reference in argument to the fact that the deeds to Mr. and Mrs. F. S. Barrett were not recorded until shortly before the bankruptcy, some 2 months before the bankruptcy of the Southern Oak Leather Company, and about 3½ months before the individual bankruptcy of Elmo L. Barrett, upon the idea that under the amendment to section 60 of the Bankruptcy Act the 4 months should not expire until 4 months "after the date of the recording or registering of the transfer, if by law such recording or registering is required." If it should be contended that under this amendment to the Bankruptcy Act the transfers were within the 4 months because in Georgia they were required to be recorded, then the case of Carey v. Donohue, 240 U. S. 430, 36 Sup. Ct. 346, 60 L. Ed. 538, would be important. The headnotes of that case will, I think, show what was decided, without attempting to quote from the opinion. The first headnote is this:

"The reference to the requirement for record in section 60 of the Bankruptcy Act is not to a requirement for the protection of bona fide purchasers without notice and who are outside the purview of the act, but to a requirement of record for protection of creditors and persons interested in the bankrupt's estate and in whose behalf or place the trustee is entitled to act; and where there is no such requirement, and the transfer was made more than 4 months before the filing of the petition, there can be no recovery under section 60."

The second headnote is as follows:

"A provision in a state statute that instruments conveying real estate shall, until filed for record, be deemed fraudulent only so far as relates to subsequent bona fide purchasers without knowledge or notice, as in section 8543, General Code of Ohio, is not a requirement that the instrument be recorded within the meaning of section 60 of the Bankruptcy Act."

The law in Georgia is very much like the law in Ohio; that is, record is not necessary against general creditors, but is necessary as to bona fide purchasers without knowledge or notice, and also mortgagees without such notice or knowledge. So that these transfers being made to settle existing indebtedness, it is the date of the conveyance and the date of the execution that would be resorted to, to determine the validity of the transfer, and not the date of its record necessarily under the amendment to section 60 of the Bankruptcy Act.

It may be well to state here the testimony of Elmo L. Barrett as to how he came to make these deeds and how they came to be witnessed afterwards. His testimony is that he made out the deed to his father on the date it bears date (November 14, 1912), and some little time after that he intended having it witnessed by the justice

of the peace, and went to his office in the evening on his way home, but failed to find the justice of the peace, Mr. L. H. Letson, in his office; but he got a man by the name of D. B. Wall to witness it, and put it back in his pocket, and carried it to his office. Afterwards he got Mr. L. H. Letson, the justice of the peace, to sign it. He thinks he carried Mr. Letson four or five papers to witness for him at the time he carried him the deed to his father in question here, and that it was some time the 1st of January, near the first of the year, that he had Mr. Letson witness this deed with the other papers. Afterward his father came to Norcross, to his place of business, and he handed him the deed; but his father told him to keep the deed for him and look after the property, and he put the paper in his safe, where it remained until he filed it for record in November, 1914.

L. H. Letson says he was justice of the peace prior to the time of this transaction, but resigned in February, 1912, and then he was appointed notary public and ex officio justice of the peace, and thinks his commission was dated January 3, 1913. He was not either justice of the peace or ex officio justice of the peace in November, 1912; but, as I have stated, Elmo L. Barrett says that he took the papers to him about the first of the year 1913, and the presumption is, of course, that Mr. Letson would not undertake to do an official act while he was not an officer, so that necessarily it was after January 3, 1913, which would be entirely consistent with the testimony of Elmo L. Barrett and of the justice of the peace.

There is nothing at all in the evidence, it seems to me, except a suspicion, as I have stated, that the deed from Elmo L. Barrett to his mother was not executed at the time he states—that is, the date it bears in July, 1913—and delivered some time near that time, when she was at his home.

A careful examination of the deeds fails to disclose anything, so far as their appearance goes, to contradict the testimony here of the Barretts about them. The old couple, Mr. F. S. Barrett and his wife, lived in Gainesville at the time of these transactions, while the son lived in Norcross, and the property he conveyed to them was in Norcross; so I do not see anything in the fact that he continued to collect the rents on the property and to look after it for his parents. He was located in Norcross and familiar with it; they were quite old, and the mother in feeble health, so that would seem to be, not only reasonable, but the natural and probable thing they would do under the circumstances. Both of them swear that they had no knowledge whatever that their son, Elmo L. Barrett, was in failing circumstances, or that he was not doing well in his business and perfectly solvent.

There is nothing in the evidence, absolutely nothing as to the mother, and I do not see that there is anything as to the father, to contradict what they say about this. A finding in favor of the trustee and against them in these cases would be absolutely without justification, if the ordinary rules and the rules of law governing such transactions are applied. Elmo L. Barrett seems to have been justified in supposing himself in good financial condition at the time these deeds are

said to have been made, and it was not until the fall of 1914, after the European War commenced and times became so stringent, that he appears to have been in failing circumstances.

The result is that decrees must be entered dismissing the bills.