## In re SPARKS.

(District Court, E. D. Tennessee, N. D. September 24, 1924.)

No. 433.

Bankruptcy ⟨⟩58—Trust deed, executed before, but recorded within, four months, held to constitute an "act of bankruptcy."

A trust deed, executed by a debtor when insolvent and with intent to prefer a creditor, more than four months before the filing of a petition in bankruptcy against him, but not recorded until within the four months period, *held* to constitute an "act of bankruptcy," in view of Shannon's Code Tenn. §§ 3749, 3752, which, as construed by the courts of the state, require such instruments to be registered before being effective against general creditors of the grantor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

In Bankruptcy. In the matter of A. E. Sparks, alleged bankrupt. On question of adjudication. Order of adjudication.

Ben H. Festerman, Frantz, McConnell & Seymour and Donaldson & Montgomery, all of Knoxville, Tenn., for petitioning creditors.

Susong, Susong & Parvin, of Greenville, Tenn., for bankrupt.

ROSS, District Judge. On the 14th day of June, 1922, certain creditors filed a petition against A. E. Sparks, seeking to have him adjudged a bankrupt and his estate administered as such. In the petition three acts of bankruptcy are alleged, to wit: (1) That on or about February 25, 1922, while insolvent, Sparks conveyed a portion of his property known as the Carson Springs Hotel property to certain of his creditors, with the intent to create a preference in their behalf and to secure a pre-existing indebtedness of $7,000. (2) That on the 25th day of February, 1922, while insolvent he transferred as a further security for the indebtedness of $7,000 certain of his property in the city of Knoxville, Tenn., with the intent to prefer the beneficiaries of said transfer as against his other creditors. (3) That, on February 27, 1922, while insolvent, he transferred certain property, a portion of which was personal property and a portion

his home place in Newport, Cocke county, Tenn., with the intent of preferring the beneficiaries thereof over his other creditors. All of said transfers were by deeds of trust.

The alleged bankrupt filed a pleading denying the commission of any acts of bankruptcy and demanding a jury to try the issues. He also filed an answer, in which he denied in detail the commission of any acts of bankruptcy on his part, denied that one of the petitioners, Clinton Milling Company, held any claim against him or that he was indebted to Clinton Milling Company in any amount, or to any one for it. He admitted the execution of the deeds of trust, but alleged that, while the deed of trust executed to secure David Stokely in the sum of $7,000 was recorded February 25, 1922, it was to secure money which had been borrowed some years before, and which had been previously secured by a deed of trust never acknowledged or placed of record, and that a new deed of trust was executed, embracing the property alleged to have been conveyed by the first deed of trust, together with certain additional property; that there was executed to J. A. Denton a deed of trust to secure him in the sum of $5,000, but that this deed of trust was executed in the month of October, 1921; and that the deed of trust to secure W. B. Wood was executed more than one year prior to the filing of the answer on June 4, 1922.

It is further contended by Sparks that at the time the petition was filed, and at the times it is claimed by the petitioners he committed the acts of bankruptcy charged in their petition, he was chiefly, if not wholly, engaged in the tillage of the soil, and for that reason not subject to be adjudged a bankrupt.

Upon the issues thus presented the matter was heard before a jury, to which five questions were submitted:

(1) Was the defendant insolvent on August 11, 1921, when the deed of trust on his residence property in Newport and other property was executed to F. M. Stokely, as trustee, to secure the indebtedness due to David Stokely?

(2) Did the defendant execute and deliver said deed of trust with intent to prefer said David Stokely over his other creditors?

(3) Was the defendant insolvent on October 20, 1921, when he executed and delivered the chattel mortgage to secure a debt to J. A. Denton?

(4) Did the defendant execute and deliver said chattel mortgage with intent to prefer said Denton over his other creditors?

(5) Did the defendant execute and deliv-

er the deed of trust on the Toovey property in Knoxville, on February 24, 1922, to F. M. Stokely to further secure the debt to David Stokely with intent to prefer said David Stovely over his other creditors?

As to the first four questions submitted, it was agreed that a majority verdict might be accepted. This verdict was in the affirmative as to each. The verdict of the jury as to the fifth question was unanimous and in the affirmative. Application was thereupon made to have the remaining issues presented by the pleadings submitted to a special master, which application was granted, and judgment was reserved on the verdict of the jury until the coming in of the master's report. Thereupon by order of the court the matter was submitted to a special master, to report on "all the issues made by said petition and the answer, except the two issues as to the insolvency of the alleged bankrupt, and as to the alleged commission of act or acts of bankruptcy heretofore submitted to a jury."

When the matter was submitted to the master, it was agreed by counsel for each party that but two questions were to be considered: (1) Do a sufficient number of creditors join in the petition filed herein? (2) Was the defendant, Sparks, chiefly engaged in farming or the tillage of the soil at the date when the alleged acts of bankruptcy were committed on or about the 25th day of February, 1922?

It seems that the indebtedness to the Clinton Milling Company is the only debt alleged by the petition to be due which is attacked, and as to this the master reported that at the date of the filing of the petition defendant was indebted to the Clinton Milling Company in the sum of at least $48. On the second question submitted he reported that the defendant was chiefly engaged in farming on the dates when it is alleged in the petition the acts of bankruptcy were committed; that is to say, in the month of February, 1922.

Exceptions were preserved by the respective parties to the findings of the master in so far as those findings were adverse, and upon application of the petitioners for a further finding as to whether or not defendant was chiefly engaged in the pursuit of agriculture on the respective dates of August 11, 1921, and October 20, 1921, the master reported that on August 11, 1921, defendant was not so engaged, but that on the 20th of October, 1921, he was chiefly engaged in farming.

Exceptions were duly preserved by defendant to the supplemental report of the master. It is contended by the petitioners that the master should have reported as to the matters embraced in the supplemental report in the first instance, that he had authority so to do, and it is contended by defendant that the master was without authority to file such supplemental report, in that rule 25, section 5, insisted upon by petitioners as granting this authority, would not apply to this proceeding.

The rule mentioned provides that the master shall, after completing the draft of his report, if sufficient time exists, give reasonable opportunity to counsel to inspect the report for the purpose of pointing out any omissions or errors therein, and that after considering any such objections he shall make such changes as he may deem necessary and "then return his report in final and complete form into the clerk's office."

The finding of the master as to each question submitted is well supported by the record. The evidence discloses that the Clinton Milling Company was a creditor of defendant in perhaps a greater sum than the master reported, but at least to the extent as reported by him. The record further abundantly justifies the report of the master, to the effect that on August 11, 1921, defendant was not engaged in farming, but that on the respective dates of October 20, 1921, February 25, 1922, and February 27, 1922, defendant was so engaged. Therefore the exceptions of the parties respectively to the findings of the master are overruled and disallowed, and the master's report in all respects confirmed. Furthermore it appears that the findings of the jury are likewise well supported by the record, and that they reached the truth of the questions submitted to them.

Pending the consideration of the case it was suggested to counsel that additional briefs were desired on the question as to whether or not, in view of the fact that the petition alleged the three acts of bankruptcy to have been committed in February, 1922, consideration could be given to the questions as to whether the alleged bankrupt had committed acts of bankruptcy on either of the dates of August 11, 1921, or October 20, 1921, or whether the petition was sufficient to warrant the court in considering those dates. Thereupon application was made by petitioners for leave to amend the petition, so as to allege the commission of acts of bankruptcy on the dates mentioned in August and October of 1921, so as to charge that the deeds of trust executed by the al-

leged bankrupt on those respective dates constituted acts of bankruptcy on his part. After consideration this amendment was allowed, and the petition as now presented stands so amended. Upon the amendment being allowed, time was asked for and granted within which additional proof might be submitted by each of the parties. That time has expired and no additional proof has been submitted. The matter is therefore to be determined upon the petition as amended, the proof heretofore submitted, and the briefs of counsel for the respective parties, and upon the entire record as presented.

To hold, as above, that the report of the master should be confirmed and that the verdict of the jury was correct does not, however, determine all the issues presented in the case, for the question arises as to whether or not the act of bankruptcy committed by defendant on August 11, 1921, at a time when he was not chiefly engaged in farming, at which time the deed of trust above mentioned was executed and at a time long prior to the four months period preceding the filing of the petition, which deed of trust was withheld from record until February, 1922, then placed of record within the period of four months prior to the filing of the petition, constituted an act of bankruptcy such as can be made the basis of an adjudication.

It would seem that the case of Carey v. Donohue, 240 U. S. 430, 36 S. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295, is controlling in the instant case. While the exact question here presented was not the principal issue determined in that case, yet it is there held that, where the statutes of a state require an instrument to be recorded in order that it may be effective as against creditors, a petition might be filed within four months from the time such instrument is placed of record, regardless of the date of its execution. In the Carey Case it appears a petition in involuntary bankruptcy was filed January 3, 1911, and an adjudication had on January 24, 1911; that on August 6, 1910, the instrument in question was executed and delivered, but was not offered for record until November 15, 1910; that on December 31, 1910, the property was conveyed to an innocent purchaser by instrument duly executed and offered for record January 3, 1911. The trustee in bankruptcy sought to reach this property. It was held that the property was not subject to the jurisdiction of the bankruptcy court, inasmuch as it had passed into the hands of an innocent purchaser, and for the further reason that, as the contracts were Ohio contracts and to be construed as such, the provisions of the Ohio statute did not require the instrument executed August 6, 1910, to be recorded in order for it to have been binding as against general creditors. In the course of the opinion (240 U. S. on pages 432–433, 36 S. Ct. 387), it is said:

"The sole question presented for the consideration of this court is whether the deed executed by the bankrupt was one which was 'required' to be recorded within the meaning of this section. If it was not, there could be no recovery of the property under section 60, as the deed was executed and delivered more than four months before the petition in bankruptcy was filed. If the deed was required to be recorded in the sense of the statute, it is clear that the trustee was entitled to recover, as the recording was within the four months period and the other conditions of recovery were satisfied."

Under the statutes of Tennessee (Shannon's Code, § 3749) it is provided as to deeds of trust such as that now under consideration that: "All of said instruments shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided."

And again (Shannon's Code, § 3752): "Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from the makers without notice. * * *"

Construing the provisions requiring registration of instruments such as deeds of trust, etc., the Supreme Court of Tennessee has held that registration is required as against creditors of the grantor and his bona fide purchasers for a valuable consideration without notice. Britton v. Thompson, 6 Yerg. 325; Ocoee Bank v. Nelson et al., 1 Cold. 193; Carson v. Browder, 2 Lea, 702; Sanders v. Everett, 3 Tenn. Ch. 523; Templeton v. Twitty, 88 Tenn. (4 Pickle) 603, 14 S. W. 435; Stratton Claimants v. Morris Claimants, 89 Tenn. (5 Pickle) 517, 15 S. W. 87, 12 L. R. A. 70. Furthermore it is held that creditors are not effected by actual notice or knowledge of unregistered

conveyances of their debtor's property. Lillard v. Rucker, 9 Yerg. 72; Ocoee Bank v. Nelson et al., supra; Kinsey v. McDearmon, adm'r, 5 Cold. 398; Buchanan v. Kimes et al., 2 Baxt. 277; Lookout Bank v. Noe, 86 Tenn. (2 Pickle) 29, 5 S. W. 433.

The deed of trust executed August 11, 1921, was such an instrument as by the statutes of Tennessee was required to be placed of record to be binding as to general creditors of defendant. It was not valid as against petitioners. It did not become effective as to petitioners until the date of its registration, consequently under the authority of Carey v. Donohue, supra, the execution of this instrument would warrant the adjudication of defendant a bankrupt, inasmuch as it clearly appears as above stated that at that time he was not engaged in the tillage of the soil, was insolvent, and his acts in the execution of this deed of trust amounted to a preference within the meaning of the statute and therefore constituted a clear act of bankruptcy.

The other questions presented have been carefully considered, but there is nothing contained in the record to change the conclusion above reached. Among other cases considered as to the proper construction to be given the Tennessee statute affecting registration of an instrument such as that in question in this case under Bankruptcy Act 1898, § 60b, as amended by Act June 25, 1910, § 11 (Comp. St. § 9644), attention is called to the following: Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441; Bunch v. Maloney, 233 F. 967, 147 C. C. A. 641; Hawkins v. Dannenberg Co. (D. C.) 234 F. 752; Johnson v. Barrett (D. C.) 237 F. 112; Emerson-Brantingham Implement Co. v. Lawson (D. C.) 237 F. 877; Marsh v. Leseman, 242 Fed. 484, 155 C. C. A. 260; In re Terrell, 246 F. 743, 159 C. C. A. 45; In re T. H. Bunch Commission Co. (D. C.) 225 F. 243; Bradley v. Robie (C. C. A.) 266 F. 884; Hayes v. Gibson (C. C. A.) 279 F. 816, 22 A. L. R. 1372; Petition of National Discount Co. (C. C. A.) 272 F. 570.

The cases above cited discuss the sections of the Bankruptcy Act mentioned, and by them contrary views are presented. However, the conclusion above reached is the result of a consideration of all the cases on the question to which attention has been directed, or which have been available.

An order will therefore be prepared in accordance with this opinion.