### In re CLOTHES, INC., d/b/a Jays Mens Shop and Mr. D's, Debtor.

### Phillip D. ARMSTRONG, Trustee of Estate of Clothes, Inc., d/b/a Jays Mens Shop and Mr. D's, Plaintiff,

### v.

### GENERAL GROWTH DEVELOPMENT CORP. and General Growth Management Corp., Defendants.

**Bankruptcy No. 81–05004.**
**Adv. No. 82–7313.**

United States Bankruptcy Court,
D. North Dakota.

Aug. 28, 1984.

Phillip D. Armstrong, Minot, N.D., for plaintiff.

Russel G. Robinson, Minot, N.D., for defendants.

## MEMORANDUM OPINION
## AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By Complaint filed September 16, 1982, the Trustee brought an action against the Defendants seeking to recover two rent payments as constituting preferential transfers pursuant to section 547 of the Code. The Defendants have taken the position that the payments were intended by the Defendants as well as the Debtor to be contemporaneous exchanges for new value or, in the alternative, were made in payment of a debt incurred in the ordinary course of business within 45 days after the debt was incurred. As such, either section 547(c)(1) or section 547(c)(2) would remove the transactions from treatment as preferences.

The case was originally submitted and decided upon the parties' Motion and Cross-Motion for Summary Judgment. *See In re Clothes, Inc.*, 35 B.R. 489 (Bankr.D.N.D. 1983). Appeal of that decision resulted in reversal and remand of the case for trial of the issue. Trial was held on August 22, 1984. The facts as relevant to a determination hearing and as derived from the Stipulation of Facts, testimony and documents received in evidence are as follows: The Defendant, General Growth Development Corp., owns a shopping center in Minot, North Dakota, known as Dakota Square. Day-to-day management is by Defendant, General Growth Management Corp. The Debtor leased rental space in the shopping center under a written lease calling for the payment of rent in advance on the first day of each month. The terms called for a minimum monthly rent of $2,370.00 plus additional monthly charges for a total monthly rent payment of $3,065.40. The Debtor ceased doing business on November 14, 1980, at which time another retailer assumed the lease upon payment of two months back rent owing at the time. An involuntary Chapter 7 petition was filed against the Debtor on January 6, 1981.

The case turns on two checks, each in the sum of $3,065.40, paid to the Defendants

on October 8, 1980, and on November 6, 1980. These checks were cashed on October 13 and November 11 respectively. At the time of the October payment, the Debtor was in substantial arrears in prior rental obligations for the months of June, July, August and September. The Trustee believes the October and November payments to have been made against the arrearages of the months prior to the month of actual payment, thus constituting preferential payments within the provisions of section 547(b).

James Menoni, employed by General Growth Management to manage Dakota Square, testified that it is his company's usual practice in situations where a tenant is several months behind in rent to allow it to remain in possession with payment of current rents as they come due. Arrearages are then picked up piecemeal over a period of time by attempting a workout with the tenant. It is a company policy that even if arrearages exist, a tenant may remain in possession so long as current rents are paid. The reason for this policy, according to Mr. Menoni, is that the expense in replacing an existing tenant and refurbishing the space for someone else makes an arrangement with the current tenant more advantageous. In conformity with this policy, the Debtor was allowed to remain in possession despite arrearages. The company's records show that the October payment was applied against the October rent obligation and the same records also reflect the fact that the November payment was booked against the November obligation.

Subsection (b) of section 547 authorizes a trustee to avoid a transfer if the following five elements of a preference are present; the transfer (1) was made to the creditor, (2) on account of an antecedent debt, (3) while the debtor was insolvent, (4) within 90 days before filing, and (5) enabled a creditor to receive more than it would have under Chapter 7. In the instant case, it appears to the Court that these elements all exist including the last element of section 547(b)(5). The last element is established by the Court taking judicial notice of the Debtor's bankruptcy file which does reveal that retention of the checks in question would result in the Defendants' receiving more than they otherwise would upon liquidation.

The Defendants resist recovery claiming that the payments are excepted from avoidance by the exceptions of section 541(c)(1) and (c)(2) in that the payments were contemporaneous exchanges for new value and that they were for a debt incurred in the ordinary course of business according to ordinary business terms and made within 45 days of being incurred.

Under section 365 of the Bankruptcy Code, an unexpired lease on real property is treated as an executory contract which involves an exchange of rights and obligations throughout the term of the lease. As each month comes up, the lessee becomes obligated anew for that month's rent and, in return, the lessor becomes obligated to provide the lessee with the leasehold for that month. Pre-Code decisions have generally held that the payment of current rent is premised upon current consideration and does not constitute a preference. *In re Barrott*, 6 Am.Bank.Rep. 199 (S.D.N.Y. 1901); *Matter of Lewis J. Bergdoll Motor Co.*, 35 Am.Bank.Rep. 32, 225 Fed. 87 (E.D. Pa.1915); and *In re Bowles*, 14 Am.Bank. Rep. (N.S.) 133 (E.D.Neb.1928). Later decisions under the Code have followed this view. Most often cited is the case of *In re Mindy's, Inc.*, 17 B.R. 177 (Bankr.S.D.Ohio 1982) where the court, in reviewing a number of rental payments made anywhere from 5 to 18 days after the first of each month, found that each of the payments were substantially contemporaneous to the time the obligation arose. Since the obligation for rent was incurred on the first of *each* month, each payment would be considered a payment for an additional month of occupancy. *See also In re Thomas W. Garland, Inc.*, 28 B.R. 87 (Bankr.E.D.Mo. 1983). Following *Mindy's* is our own Eighth Circuit wherein *In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109 (8th Cir.1982) the court made an en banc review

of a bankruptcy court order concerning the issue of whether interest payments made within 90 days of the bankruptcy filing were preferential transfers. In that case, the debtor made regular payments of interest pursuant to the terms of a promissory note. In question were three payments made in May, June and July for interest which had accrued in each of those months. It was the bank's position that the debt for interest was incurred only as each day's interest accrued. The appellate court analogized the situation before it to that of a tenant who, said the court, "pays for a continued use of the property". Hence, the debt was not incurred until the debtor actually used the money, and that occurred on a daily basis. In so holding, the appellate court chose to follow a line of cases which hold that under section 547(c)(2) a debt is incurred on the date the debtor first becomes obligated. *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981); *In re Ken Gardner Ford Sales, Inc.*, 10 B.R. 632 (Bankr.E.D.Tenn.1981); and *In re McCormick*, 5 B.R. 726 (Bankr.N.D.Ohio 1980).

■ From the evidence adduced at trial, it appears the payments were accepted as payments for the current month's rental obligation and posted to the Debtor's account as such. The circumstances of *Matter of Lario*, 36 B.R. 582 (Bankr.S.D.Ohio 1983) cited by the Trustee are dissimilar in that in that case the debtor was consistently in default on rental obligations when, as a condition of a sale of its business, the buyer assumed *all* rents and the trustee thereafter sought recovery from the developer claiming the debtor had not received new value. In *Lario*, the buyer at the time of sale paid one lump sum of $3,225.00 as a part of the purchase arrangement. The debtor in that case received nothing. In the instant case, however, we are not faced with a lump sum payment of all arrearages but rather two monthly rental payments, each for the usual monthly amount, and each being paid in close proximity to the date incurred with the Debtor itself remaining in possession for the month in which the payment was received. The Debtor in the instant case did not incur a debt for October or November until the first day of each of those months. Both the October payment and the November payment were for the exact amount of the rental obligation for those months, respectively, and both were made within 45 days of the date the respective obligations were occurred. The testimony of Mr. Menoni was that it was the usual and customary practice of his company to allow defaulting tenants to remain in possession in spite of accumulating arrearages due to the problems and expense of finding replacement tenants. The Court is satisfied that the elements of a section 547(c)(2) exception have been met.

■ It appears, however, from the Stipulation of Facts that the Debtor's benefits under the lease ran only to November 14, 1980 at which time another retailer assumed the lease and the Debtor ceased doing business. Thus, the November payment of $3,065.40 could not pertain totally to the month of November. The November payment, although perhaps intended as payment for the full month of November, in fact could only be applied towards the first 14 days of the month since the Debtor no longer possessed the property thereafter. Accordingly, the sum of $1,634.88 representing the 16 days remaining in the month after which the Debtor relinquished possession would have to have been applied against rental and expense arrearages from preceding months and, assuming that was the case, would be a preference subject to the Trustee's avoiding power.

Based upon the foregoing, the Court determines the sum of $1,634.88 to be a preference under the provisions of section 547(b) and judgment in this amount will be entered in favor of the Plaintiff in accordance herewith.

IT IS SO ORDERED.