In the Matter of CARO PRODUCTS, INC., Debtor.

Robert HERTZBERG, Trustee to Caro Products, Inc., Plaintiff,

v.

H. HIRSCHFIELD & SONS, INC., Defendant.

Bankruptcy No. 79–03440.
Adv. No. 80–1632.

United States Bankruptcy Court, E. D. Michigan, S. D.

Sept. 29, 1982.

John D. Huige, John Bellaver, Hertzberg, Jacob & Weingarten, P. C., Detroit, Mich., for plaintiff.

Susan M. Cook, Isackson, Neering & Quinn, P. C., Bay City, Mich., for defendant.

## MEMORANDUM OPINION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

The questions presented by this adversary proceeding are: (1) Whether Section 547(b) of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 547(b), operates to deprive a creditor of property without due process in violation of the Fifth Amendment to the United States Constitution when the creditor's property interest arose subsequent to the enactment of the Act, but prior to the effective date thereof; and (2) Whether a debt is deemed to have been incurred upon delivery of goods to the purchaser when payment for the goods is not due until 60 days after delivery so as to constitute a transfer on account of an antecedent debt within the meaning of Section 547(b)(2).

This Court finds that: (1) Section 547(b), 11 U.S.C. § 547(b), does not deprive "gap period" creditors of due process in violation of the Fifth Amendment to the United States Constitution; and (2) A debt is incurred under Michigan law upon delivery of the goods to the purchaser, notwithstanding the fact that payment therefor is not due until 60 days after delivery, so as to constitute a transfer on account of an antecedent debt within the meaning of Section 547(b)(2), 11 U.S.C. § 547(b)(2).

This adversary proceeding comes before this Court upon briefs and affidavits filed by the parties. The facts giving rise to this cause, as stipulated to by Counsel for Plaintiff and Counsel for Defendant, are as follows.

The Defendant, H. Hirschfield & Sons, Inc., (hereinafter referred to as "Defendant"), and Caro had contracted for the purchase, sale and delivery of goods from Defendant to Caro sometime in 1979. On August 15, 1979, Caro paid $17,733.91 to Defendant by check for the goods so delivered. Defendant was thus a creditor of Caro at the time of this transfer.

On October 17, 1979, certain creditors filed an involuntary Chapter 7 petition against Caro Products, Inc., (hereinafter referred to as "Caro"). The Plaintiff, Robert Hertzberg (hereinafter referred to as "Plaintiff"), was subsequently appointed as the duly qualified and acting Trustee for Caro in this Chapter 7 proceeding.

Although Caro was insolvent on August 15, 1979, Defendant neither knew nor had reason to know that Caro was insolvent at that time. Nevertheless, the transfer enabled Defendant to receive more than it would have received in a Chapter 7 proceeding if such transfer had not been made.

Finally, both Defendant and Caro have agreed that the debt for the goods delivered was not payable until 60 days from the delivery date of those goods. The payment of $17,733.91 was made before the Bankruptcy Reform Act of 1978 became effective, but after it was enacted.

■ It is to be noted at the outset that questions concerning the constitutionality of an Act of Congress are generally reserved for appellate courts rather than trial court. "[A] trial court should not annul an Act of Congress, unless it is in conflict with some plain mandate of the Constitution, and the determination of constitutionality should generally be left to the appellate courts." *United States v. Smith,* 62 F.Supp. 594, 596 (W.D.Mich., 1945). "Ordinarily the constitutionality of statutes is reserved to the appellate courts, and when the trial court undertakes to pass upon the question it must be satisfied of the unconstitutionality beyond a reasonable doubt before deciding." *Chrestensen v. Valentine,* 34 F.Supp. 596, 598 (S.D.N.Y.1940).

Congress, acting pursuant to Article I, Section 8, Clause 4 of the United States Constitution, enacted the Bankruptcy Reform Act of 1978 on November 6, 1978, which became effective on October 1, 1979. All petitions filed after the effective date of the Act are governed by the new law. Pub.L. No. 95–598, Title IV, §§ 402(a), 403(a) (Nov. 6, 1978). The section under attack herein reads as follows:

(b) Except as provide in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

■ The legislative history to this provision indicates a dual intent: first, the operation of the statute provides for the rehabilitation of debtors and, secondly, the statute aims at settling creditors' claims.

'The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally.

**248**

The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.'

4 *Collier on Bankruptcy* at para. 547.03 (15th ed.) *quoting* H.R. 8200, H.R. Rep. No. 595, 95th Cong., 1st Sess. 177–78 (1977), U.S. Code Cong. & Admin. News 1978, p. 5787.

■ Defendant at bar argues that Congress did not intend a retrospective application of Section 547(b) for to do so would thwart the Congressional policy of that statute; a retrospective application, it is argued, results in an irrational and arbitrary application of the statute so as to violate substantive due process. Furthermore, Defendant argues that it did not have notice of the new law at the time its security interest arose and, therefore, a procedural due process violation occurred.

In adhering to the above-cited words of caution with respect to deciding constitutional questions of federal legislation, suffice it to say that Defendant Hirschfield has not shown beyond a reasonable doubt that a due process violation has occurred. In *In the Matter of Middleton,* 13 B.R. 485, 8 B.C.D. 194 (Bkrtcy.E.D.Mich., 1981), it was argued that to apply Section 522(f) [1] of the Code, 11 U.S.C. § 522(f), to security transactions entered into between November 6, 1978, and October 1, 1979, violated the Fifth Amendment Due Process clause. In an opinion delivered by Judge Brody, it was held that such retrospective application did not violate due process.

'All parties to contracts are of necessity, aware of the existence of, and subject to the power of Congress to legislate on the subject of bankruptcies. They were and are chargeable with knowledge that their rights and remedies, in case the debtor becomes insolvent and is adjudicated a bankruptcy [sic], are affected by existing bankruptcy laws and all future lawful bankruptcy legislation which might be enacted....'

*Id.* 13 B.R. at 486, 8 B.C.D. at 194, *quoting In re Prima Co.,* 88 F.2d 785, 788 (7th Cir. 1937).

Moreover, the genesis of Section 547 is Section 60 of the Bankruptcy Act. That statute was not substantially changed by Section 547.[2] Defendant at bar must therefore be charged with at least constructive knowledge of the state of the law at the time the alleged preferential transfer occurred. The Congressionally-stated purposes of a "fresh start" policy and "equality of distribution" are sound; they are executed by way of Section 547 with all due consideration of both debtors' and creditors' rights. Similarly, knowledge of the new legislation must be imputed to Defendant Hirschfield. No Fifth Amendment due process violation has been shown. This is the short and inevitable answer to Defendant's claim that Section 547(b) is unconstitutional.

■ As to whether Plaintiff Trustee may set aside Caro's August 15 payment to Defendant as a voidable preference pursuant to Section 547(b), we find that a voidable preferential transfer did in fact take place. First, Section 101(40) of the Code defines

---

1. Section 522(f) reads as follows:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
(1) a judicial lien; or
(2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jew-

elry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;
(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

2. Basically, Section 547(b) shortened the four-month provision of Section 60(a) to 90 days. Additionally, the requirement of Section 60(b) that the transferee have reasonable cause to believe the debtor to be solvent is deleted.

the term "transfer" to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." At bar, a transfer clearly occurred. Caro parted with money when it paid Defendant by check on August 14, 1979. "That payment of a debt by check is a transfer of property is manifestly expressed in the broad definition of 'transfer' under the Bankruptcy Code, 11 U.S.C. § 101(40)." *In the Matter of Peter L. Duffy,* 3 B.R. 263, 6 B.C.D. 88, 89 (Bkrtcy.S.D. N.Y.1980). Having shown that a transfer occurred, Plaintiff Trustee also establishes that such transfer is a voidable preference.

First, payment of a debt to the creditor most definitely benefits the creditor. Secondly, such payment was for an antecedent debt; the parties have stipulated that Defendant was a creditor of Caro at the time of said transfer. Third, the payment was made while Caro was insolvent. Under Section 547(f) there is a presumption of insolvency which requires the party against whom the presumption exists, Defendant at bar, to come forward with evidence to rebut the presumption. The record in this case is void of any such evidence, save for the stipulation of the parties that Defendant did not know nor did it have reason to know of Caro's insolvency; the effect of this stipulation, however, is merely to deny rather than rebut the presumption of insolvency. Such transfer occurred 90 days before the filing of the bankruptcy petition; the transfer was made on August 15, 1979, and the filing of the Chapter 7 petition occurred on October 17, 1979. Finally, the parties have stipulated that the transfer enabled Caro, the Debtor, to receive more than it would have received in a straight liquidation had the transfer not occurred. Consequently, Plaintiff has established a *prima facie* case for the existence of a voidable preference; therefore, the remaining issue for resolution is whether the payment falls within the exception in Section 547(c)(2).

Section 547(c)(2) of the Code specifically provides:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms

In order for this exception to apply, all four elements must exist. Under the facts at bar, sub. (B) is not present.

Defendant Hirschfield argues that Caro's debt did not arise until 60 days after delivery of the goods because payment was not due until that time. The question of when a debt is incurred, however, is commonly answered as when the debtor acquires a property interest in the consideration that gave rise to the debt.

The determination of when a debt is actually 'incurred' is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The probably better view is that the debt is incurred whenever the debtor obtains a property interest in the consideration exchanged giving rise to the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides the debtor has a special property interest and the debt is 'incurred.'

4 *Collier on Bankruptcy* para. 547.38 (15th ed. 1979). Similarly, Mr. Richard B. Levin, a member of the House Judiciary Committee Staff which drafted the Code stated: "Congress has not defined when a debt is incurred.... For the purpose of this exception, the debt is incurred when it becomes a legally binding obligation on the debtor. Thus when goods are shipped, the debtor becomes liable for the payment, and the debt is incurred." Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am.Bankr.L.J. 173 (1979).

A number of courts have also spoken on this question. In *In re Gulf States Marine, Inc.*, 6 B.C.D. 79 (W.D.La.1980), the debtor incurred certain obligations to one of its creditors on open account from March 26, 1979, through May 25, 1979. The debtor paid the creditor in full for the goods on September 29, 1979, and subsequently filed a Chapter 7 petition on October 22, 1979. The trustee alleged that the September 29 transfer constituted a voidable preference; the court agreed and stated that "the payment was made 127 days after the last debt was incurred. Clearly, the test [of 547(c)(2)(B) ] is not met." *Id.* at 81.

*In re Bowen*, 3 B.R. 617, 6 B.C.D. 254 (E.D.Tenn.1980), concerned a preferential transfer attack upon a payment made pursuant to an installment obligation. The debtors executed two notes in October, 1978, with repayment in monthly installments to commence on November 16, 1978. The debtors filed a bankruptcy petition on October 11, 1979, but had been making regular installment payments for a year prior thereto.

> The debt was incurred in October, 1978. The installment payments in question were made in July, August and September of 1979, which is more than 200 days after the debt was incurred. Thus, the sums paid by debtors to defendant within ninety (90) days of October 11, 1979, constitute preferential payments within 11 U.S.C. § 547.

Id. 3 B.R. at 619.

In applying these principles to the case at bar, we find that both Defendant and Caro had been operating on open account from April 27, 1979, through July 31, 1979. The payment of $17,733.91 to Defendant on August 15, 1979, was in satisfaction for goods shipped to Caro for the period of April 27, 1979, to May 25, 1979. For each separate shipment of goods throughout this period, Caro obtained a property interest therein. M.C.L.A. §§ 440.2401; .2501. Moreover, tender of delivery makes it incumbent upon the buyer, Caro, to accept the goods. M.C. L.A. § 440.2507. Once Caro accepted the goods, the duty to pay the contract price arose. M.C.L.A. § 440.2607. Thus, the August 15 payment of $17,733.91 was made well outside of the 45 day period after the last debt was incurred and, consequently, Plaintiff Trustee may recover that sum as voidable preference. IT IS SO ORDERED.