FLOYD R. GIBSON, Senior Circuit Judge.
First National Bank in St. Louis (Bank) appeals from an order of the bankruptcy court, 12 B.R. 597,[1] which denied the Bank’s motion to amend an order directing the return of funds received by the Bank because such funds constituted a preference under the Bankruptcy Act. A panel of this Court affirmed the judgment, one judge dissenting. 676 F.2d 1220. Rehearing en banc was granted, and the case was rear-gued.[2] We now reverse.
I. Facts
Debtor-appellee Iowa Premium Service Co. (IPSCO), a premium finance company, borrowed $400,000.00 from appellant Bank and in exchange executed a promissory note on November 13,1979, payable to the Bank. The interest was to be calculated daily at a rate that could fluctuate (prime + 1V4%) and paid monthly. The note was subject to payment on demand and subject to prepayment. The note by its terms matured on July 31,1980. IPSCO regularly made interest payments pursuant to the agreement, including the payments at issue here. The payments at issue were made by IPSCO in the first half of the month in May, June, and July, 1980, for the interest which accrued in each of the preceding months.[3] Shortly after IPSCO made the payment in July for the June interest the Bank learned of IPSCO’s insolvency. On July 31, 1980, IPSCO filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. 11 U.S.C. §§ 1101-1174, (Supp. Ill 1979).
IPSCO as debtor-in-possession sought the return of the last three interest payments arguing they were preferential transfers because they were made within ninety days before the date of the filing of the petition of bankruptcy. Id. at § 547(b)(4)(A).[4] The Bank argued that the payments fell within an exception to the preferential transfer section in § 547(c)(2) for payments made in the ordinary course of business and made not later than forty-five days after the debt was incurred.[5] The parties stipulated that the payments were made in the ordinary course of business, so the only issue was whether the payments were made within forty-five days after the debt was incurred. IPSCO argued that the debt for the interest payments was incurred when the note was executed. The Bank argued that the debt was incurred daily as each day’s interest accrued.[6] The bankruptcy court found in *1111 IPSCO’s favor, concluding that the debt for the interest payments was incurred when the note was executed.
II. Analysis
Before discussing the relevant statutes and case law, it is important to understand the contingent nature of the debt at issue. IPSCO was obligated to pay interest only for the time it retained the use of the money that the Bank had loaned to it. The interest accrued daily, and under the terms of the agreement IPSCO became obligated to pay at the scheduled rate at the end of the month. The Bank would not have a cause of action for nonpayment of the interest until the end of the month in which IPSCO retained use of the principal. IP-SCO had the option to prepay the loan, and if it did so the total interest payments would have been less than if the payments were made according to schedule. The amount of interest IPSCO was obligated to pay was not reduced to a sum certain as of the date of execution of the note and this would be the case even if the interest rate did not fluctuate. A fixed obligation arose only after each day IPSCO retained the use of the money. IPSCO’s argument is that the debt for the interest was incurred on the date of execution even though an action would not lie to collect the interest at that time.
The Bankruptcy Act does not define when a debt is incurred. It does define “debt” as “liability on a claim.” 11 U.S.C. § 101(11) (Supp. Ill 1979). The Act defines a “claim” as a:
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]
Id. at § 101(4). The House and Senate reports on the Bankruptcy Act say that the terms “debt” and “claim” are coextensive. S.Rep. No. 989, 95th Cong., 2d Sess. 23, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5809; H.R.Rep. No. 595, 95th Cong., 1st Sess. 310, reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6267 [hereinafter House Report]. These provisions leave unanswered the question of when the debt is “incurred.” However, bankruptcy case law indicates that an interest debt is not incurred until the interest accrues.
Cases interpreting § 547(c)(2) hold that a debt is incurred on the date upon which the debtor first becomes legally bound to pay, a conclusion with which we agree. Barash v. Public Finance Corp., 658 F.2d 504, 512 (7th Cir.1981); In re Ken Gardner Ford Sales, Inc., 10 B.R. 632, 647 (Bkrtcy.E.D.Tenn.1981); In re McCormick, 5 B.R. 726, 731 (Bkrtcy.N.D.Ohio 1980).
There can be no doubt that IPSCO was not legally bound to pay interest when the note was executed; it had no obligation to pay interest until it used the money. IPSCO can be compared to a tenant who leases property; the tenant pays for the continued use of the property, not just for taking possession.[7] Interest is simply rent for the use of money. IPSCO can also be compared to a customer of an electric utility. The customer agrees to pay for whatever electricity it uses, but the debt to the utility is not incurred until the resource is consumed. A customer does not incur a debt when it makes the original agreement with the utility. Likewise, IPSCO agreed to pay interest for the use it made of the money, but the debt was not incurred until *1112 IPSCO actually used the money. This analogy is found in the House Report at 373, and it is discussed in Barash, 658 F.2d at 509, and 4 Collier on Bankruptcy, ¶ 547.38 (15th ed.1982). Similarly, the court in In re Hersman, 20 B.R. 569, 571-72 (Bkrtcy.N.D. Ohio 1982) held that the mere establishment of a creditor-debtor relationship in the context of a credit card agreement was not the incurrence of a debt.
Collier states that a debt is incurred when the debtor obtains a property interest in the consideration exchanged giving rise to the debt. 4 Collier, supra, at ¶ 547.38. It is clear that this definition would apply to interest payments once one understands that the use of the money for another day is new consideration each day.
Furthermore, only two cases other than the instant case discuss the question of when a debt for an interest payment is incurred, In re Goodman Industries, Inc., 21 B.R. 512, 521-22 (Bkrtcy.D.Mass.1982); Ken Gardner, 10 B.R. at 647, and the latter reaches the same conclusion we do. The cases relied on by IPSCO are distinguishable. Barash, McCormick, and In re Bowen, 3 B.R. 617 (Bkrtey.E.D.Tenn.1980) addressed the issue of when a debt for a payment under an installment plan is incurred. Some or all of the payments were mixed principal-and-interest payments; others might not have had an interest component. The courts did not discuss the possibility of segregating the interest portion of the installment payments, so these cases cannot be said, to have reached a conclusion as to when the debt for the interest was incurred. Furthermore, the judge who decided Bowen was the same judge who decided Ken Gardner. In Ken Gardner he did give separate consideration to the interest payments and distinguished them from the installment payments in Bowen. 10 B.R. at 647. As for the Goodman case, the court reached its conclusion by citing Barash, McCormick, Bowen, and the bankruptcy court in the instant case, but the court offered no analysis. The court cited Ken Gardner as offering a contrary view, but it made no attempt to reconcile the fact that Bowen and Ken Gardner were decided by the same judge.
Finally, the policies behind the preferential section are consistent with the language of the Bankruptcy Act. The exception to the preference section is intended to insulate ordinary trade credit transactions that are kept current, and Congress believed that such transactions would involve the provision of a product in one month and the billing for the product near the beginning of the following month. Levin, An Introduction to the Trustee’s Avoiding Powers, 53 Am.Bankr.L.J. 173, 186-87 (1979). The product a bank deals in is money, and a bank charges for the continued use of money. If IPSCO’s interpretation of the Act were adopted, banks would be in a disadvantaged position compared with trade creditors who deal in the sale of tangible goods. Putting banks in such a position would discourage them from giving loans to marginal debtors, which would increase the likelihood of bankruptcies.
We are not suggesting that there are not countervailing policy considerations. When dealing with reorganization, one creditor’s gain is usually another’s loss. Congress could decide that banks are less in need of protection than other creditors and legislate accordingly. But a court should not make such a decision absent evidence of a congressional intent to do so, especially when the plain language and usual meaning of the words are clear. We will treat interest obligations like any other debt and hold that a debt for interest payments is incurred on the date upon which the obligor first becomes legally bound to pay that interest. In this case the obligor first became legally bound to pay on the date on which the interest accrued.
The judgment of the bankruptcy court is reversed.

. The Honorable Richard F. Stageman, United States Bankruptcy Judge, Southern District of Iowa.

. The case was reargued before the judges of the circuit in regular active service and the Honorable Floyd R. Gibson, Senior Circuit Judge, who elected to and was designated to participate because he was the member of the panel which originally decided the case. 28 U.S.C.S. § 46(c) (Cum.Stat.Serv.1982).

. The April interest was paid on May 8, the May interest was paid on June 12, and the June interest was paid on July 15.

. Section 547(b) reads in pertinent part:
“Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor ... (4) made — (A) on or within 90 days before the date of the filing of the petition .... ”

. Section 547(c) reads in pertinent part:
The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—
(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;
(B) made not later than 45 days after such debt was incurred;
(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
(D) made according to ordinary business terms ....

.All the interest payments at issue were made within forty-five days of the accrual of interest for the first day of the month, see note 3, supra, so the entire month’s interest payment would be nonpreferential under the Bank’s argument. If the interest payments had not been made until later in the month, only the interest which had accrued within forty-five days of the pay *1111 ment would be nonpreferential under the Bank’s argument.

. In In re Mindy’s, Inc., 17 B.R. 177, 179 (Bkrtcy.S.D.Ohio 1982), cited by the dissent as Carmack v. Zell, 17 B.R. 177 p. 1113-1114, post, the court held that a debt for rent is incurred as the lease progressed rather than (as the trustee contended) when the lease was executed. In dicta the court stated that rent is distinguishable from interest payments. We disagree with the dicta in this case.