**In re HANDSCO DISTRIBUTING, INC.,**
**fka: H & S Company, ID#**
**31–0832143, Debtor.**

**Jeffrey P. HARRIS, Trustee of Handsco**
**Distributing, Inc., Plaintiff,**

v.

**GLO-INTERNATIONAL**
**CORPORATION,**
**Defendant.**

**Adv. No. 1–83–0072.**
**Bankruptcy No. 1–82–03505.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

May 7, 1985.

George K. Fogg, Cincinnati, Ohio, for BancOhio.

Michael L. Cioffi, Columbus, Ohio, for Glo-International.

Jeffrey P. Harris, Cincinnati, Ohio, trustee for Handsco Distributing.

## DECISION

BURTON PERLMAN, Bankruptcy Judge.

Plaintiff in this adversary proceeding is the trustee of Handsco Distributing, Inc., a debtor in a Chapter 7 case pending in this court. The Trustee filed his complaint herein alleging an avoidable preference under 11 U.S.C. § 547. While the subject of the original complaint was eighty-one heaters, an amended complaint was subsequently filed in which an additional claim of preference was lodged in regard to certain payments to defendant. Subsequently a motion to intervene on behalf of BancOhio National Bank (BancOhio) was filed and intervention was permitted. The trustee made an agreement with BancOhio which was approved by the Court after opportunity for objection thereto by creditors. By the agreement, the trustee recognized the security interest of BancOhio in inventory, while BancOhio agreed to assert no claim to payments by cash or check made by the debtor.

Plaintiff and defendant Glo-International Corp. (hereafter "Glo") filed a Stipulation of Fact. The Stipulation says that on or about October 26, 1982, debtor transferred to Glo certain Corona heaters with a value of $11,292.64. The Stipulation also says that on or about November 25, 1982 and October 27, 1982 debtor transferred to Glo the sums of $17,769.62 and $11,985.01. Finally, the Stipulation says that the heaters and funds just mentioned were transferred to defendant within ninety (90) days prior to the filing of the petition.

None of the elements of plaintiff's prima facie case, those elements set forth at 11 U.S.C. § 547(b), are disputed by defendant Glo, and, indeed, we find as a fact that plaintiff sustained his burden with respect to all requisite elements. The battleground in the case is to be found at § 547(c). (We must apply that subsection as it was prior to the 1984 Bankruptcy Amendments since this adversary proceeding was commenced prior to that time, and the parties do not contest that the amendment to the subsection made by the 1984 Amendments which became effective July 10, 1984 are to be applied prospectively only.) The pertinent language of the statute, then, is:

(c) The trustee may not avoid under this section a transfer—

\*   \*   \*   \*   \*   \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms;

\*   \*   \*   \*   \*   \*

We must consider the evidence and decide this case on the basis of whether Glo has sustained a defense under this subsection of the Code, more specifically whether payment was made within 45 days after the debt was incurred. Plaintiff contends that the date the debt was incurred was the date of sale and/or shipment. Defendant Glo, on the other hand, urges that the date the debt was incurred was when debtor first became obligated to pay for the goods.

In addition to the Stipulation of Fact, the evidentiary record before us consists of the testimony of a single witness, Kenneth R. Hopkins, formerly president of debtor. Hopkins testified that the debtor had been a distributor for Glo, and in 1982 purchased some kerosene heaters from Glo. There was a first order for 380 heaters shipped April 30, 1982 and received May 3, 1982 by debtor. There was a subsequent shipment of 260 heaters invoiced July 27, 1982 and received July 28, 1982 by debtor. It was also established that debtor returned 81 heaters to Glo on October 26, 1982. Debtor sent a check to Glo in the amount of $11,985.01 dated October 11, 1982 in part payment of the July 27–28 shipment. Further, on November 23, 1982 debtor made a pay-

ment to Glo in the amount of $17,769.62 on account of the April—May shipment.

On cross examination, it was further elicited from Hopkins that the April and July shipments were really part of a single order. The 260 heaters actually shipped in July were mentioned in the invoice sent by Glo in April 1982, and this invoice contained the language: "terms: ⅓ 3% October 10, 1982; ⅓ 1.5% November 10, 1982; ⅓ net December 10, 1982." The first obligation to pay, then, according to the express terms of payment agreed to by the parties was October 10, 1982.

The shipment of 81 heaters and two payments sought to be recovered by the plaintiff as preferences were sent within the ninety days preference period. They were sent on account of shipments of heaters from Glo to debtor in April and July 1982, concededly more than 45 days prior to the transfers alleged to be preferential. On these facts, plaintiff says that Glo's defense founders. Glo, on the other hand, argues that the determinative date is October 10, 1982 when payment first became due according to the agreement between the parties. We have reached the conclusion that the position of the trustee is correct and that the date the debt was incurred is the date debtor first became obligated to pay for goods, that is, the date that heaters were received in May and July 1982.

A sound basic statement of the applicable law pertinent here was given by Judge Newsome of this court in *In Re Richter and Phillips Jewelers and Distributors, Inc.*, 31 B.R. 512, 515 (Bankr.S.D.Ohio W.D.1983):

It is well-established that a debt is incurred for purposes of this provision at the time when debtor acquires a property interest in the consideration that gave rise to the debt. It is equally well-established that such property interest arises at the time when the goods are delivered, shipped or identified to the contract, not at the time payment is due or the invoice is sent. *See, e.g., In re Caro Products, Inc.*, 23 B.R. 245 (Bkrtcy.E.D.Mich.1982);

*In re Fabric Buys of Jericho, Inc.* 22 B.R. 1013 (Bkrtcy.S.D.N.Y.1982); *In re Valles Mechanical Industries*, 20 B.R. 350 (Bkrtcy.N.D.Ga.1982); *In re Brown*, 20 B.R. 554 (Bkrtcy.S.D.N.Y.1982); *4 Collier on Bankruptcy* ¶ 547.38 (15th Ed.1979).

The facts, however, in *Richter and Phillips* are specifically different from those in the case at hand. In *Richter and Phillips* there was a conventional sale of goods, the terms of which were "net ninety (90) days." The quoted statement indicates a benefit to the purchaser if payment is made within ninety days of shipment. In fact, payment was not made until after such ninety days. Defendant in the *Richter and Phillips* case urged that the expiration of the ninety day period from shipment should be regarded as the date that the debt was incurred. This position was rejected by the court.

Glo argues that the result which obtained in *Richter and Phillips* and like cases should not control us here. It is Glo's position that the court should not regard that the 45 day period of § 547(c)(2)(B) commences to run until the purchaser is obligated to pay for the goods that he receives. Here, Glo says, by agreement between the parties the first payment was not due until October 10, 1982 and payment was made within 45 days of that date. We reject this argument for we have reached the conclusion that it is not consistent with either the language or the intent of the statute.

The theory of preferences in bankruptcy is that they are recoverable because there should be parity between creditors. That is, within the ninety day period prior to the filing of a bankruptcy case, it will be presumed that the creditors then paid received a payment at a time when the debtor was in trouble. It is not fair that any creditor should be preferred over others during that preference period and so we will permit a trustee to recover payments which were made within the provisions of § 547(b) so that they may be equitably distributed among all creditors. The formulation embodied in § 547 included certain exceptions

to the presumption and these appear at § 547(c). The statute there removes from the sweep of § 547(b) transactions clearly inconsistent with the basic thrust of § 547(b), contemporaneous exchanges, payments in the ordinary course of business, the giving of new value in a security transaction and like limitations. The exclusions in § 547(c) were not meant to remove from the preference statute an ill defined area of possible preferences. The exclusions were quite specific. This is true of the particular kind of transaction contemplated at § 547(c)(2), the ordinary course of business exception, a transaction which is common and well understood. There the drafters had in mind the situation where there is a sale of goods with payment to be made within thirty days. A grace period is provided in the statute which expands that to forty-five days.

The transaction entered into between the parties here simply does not fit into the concept of § 547(c)(2) in its pre-1984 formulation. To make it fit, one would have to resort to artificiality. That is, one would have to pretend that the language of the statute was "not later than forty-five days after payment for such debt first became due", instead of "after such debt was incurred." Clearly the drafters by using the latter language had something different in mind from what is stated in the former language. The statute, then, simply does not permit the construction contended for by Glo.

Glo in contending for its result, relies upon *In Re Iowa Premium Service Co., Inc.*, 695 F.2d 1109 (8th Cir.1982) for the proposition that the date that a debt is incurred should be regarded as the date upon which the debtor first becomes legally bound to pay the debt. Further, Glo argues that the court must consider more than the date that a party obtains a property interest in determining the date that a debt is incurred, citing *In Re Mindy's, Inc.*, 17 B.R. 177 (Bankr.S.D.Ohio 1982). Both those cases are distinguishable. Neither of them involved a sale of goods. *Iowa Premium* involved interest payments within the preference period to a bank on a note held by the bank, the court concluding that the interest payments were not incurred until they accrued each month. Similarly, in *Mindy's*, monthly rental payments were held not to be preferential, the court finding that the monthly rental payments were not incurred until each month. We have no difficulty in distinguishing those cases from that before us. In the *Iowa Premium* case it was not the principal of the obligation which was being dealt with, but merely interest which is a regularly accruing amount each month. The same characterizes the *Mindy's* transaction. That feature is not to be found in the transaction between the debtor and Glo. That dealt with the sale of goods which the parties knew that debtor would have to pay for as soon as they were shipped, though between themselves they adjusted the date for payment. That adjustment does not affect the date the debt was incurred.

Accordingly we conclude that the transfers here in question, the 81 heaters transferred from debtor to Glo on October 26, 1982, and the payments of $11,985.01 and $17,769.62 respectively made October 27, 1982 and November 25, 1982 by debtor to Glo are preferential and may be recovered by the plaintiff. (As earlier noted plaintiff has relinquished any claim in the 81 heaters because of the security interest of BancOhio therein.) Plaintiff shall have judgment against defendant Glo in the amount of $11,985.01 plus $17,769.52, or $29,754.53.