In re AOV INDUSTRIES, INC., Alla-Ohio Valley Coals, Inc., Morehead City Coal Terminals, Inc., Camden Coal Terminal, Inc., A & T Associates, Inc., Fairmont Energy, Inc., Noralla Corporation, Birnen Coal Co., Inc. and Diggem Coal Co., Inc., Debtors.

William J. PERLSTEIN as Disbursing Agent for the AOV Industries Fund, Plaintiff,

v.

Robert A. SALTZSTEIN, Defendant.

Bankruptcy No. 81–00617.
Adv. No. 84–0226.

United States Bankruptcy Court, District of Columbia.

July 18, 1986.

Max O. Truitt, Jr. and Alan S. Tenenbaum, Wilmer, Cutler & Pickering, Washington, D.C., for the Disbursing Agent.

Stephen M. Feldman, Wyatt & Saltzstein, Washington, D.C., for Robert A. Saltzstein.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge, Sitting by Designation.

The dispute here arises on two separate motions: a motion to dismiss filed pursuant to Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(6) and a motion for summary judgment pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56. The underlying complaint is an action to avoid and recover a preferential transfer of property pursuant to sections 547 and 550 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101–151326 ("the Code"). The plaintiff in this action, William J. Perlstein ("Perlstein"), filed suit in his capacity as Disbursing Agent for the AOV Industries Fund. As Disbursing Agent, Perlstein has authority under the Court-approved Plan of Reorganization and section 1123(b)(3)(B) of the Code to bring preference actions.

After the Disbursing Agent filed his preference action, the defendant, Robert A. Saltzstein ("Saltzstein"), filed his Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted. This motion, raising section 546(a)(1)'s two-year statute of limitation as a bar to the prefer-

ence action, was heard and taken under advisement. Thereafter the Court heard argument on the Disbursing Agent's summary judgment motion. The Court granted partial summary judgment on two issues raised by the motion and took the remaining issue, the applicability of the "ordinary course of business" defense provided by section 547(c)(2), under advisement.

The facts of the case are not disputed. On November 6, 1981, AOV Industries, Inc. and several of its subsidiaries filed for reorganization under chapter 11 of the Code and became debtors-in-possession. The debtors' cases were consolidated. A plan of reorganization was approved by the Court on July 30, 1983. Among other things, this plan provided for the appointment of a Disbursing Agent empowered to institute preference actions and perform other duties.[1]

The Disbursing Agent filed the instant preference action against Saltzstein on October 5, 1984 to set aside a transfer of $20,403.56 made by check and paid by the drawee, Equibank, N.A., on August 13, 1981. This transfer had been made pursuant to an agreement between Saltzstein, J. Richard Knop ("Knop"), and Alla-Ohio Valley Coals, Inc. ("Alla") executed on May 19, 1978. The $20,403.56 transfer represented the fourth of a scheduled five annual payments of $20,000.00 each.

In numbered paragraph 2 of the May 19, 1978 agreement, Alla, through its representative, Knop, agreed to retain Saltzstein as an international business consultant for

1. William J. Perlstein was appointed Disbursing Agent on June 30, 1983. Article XIII of the Amended Plan of Reorganization (as amended further on June 28, 1983) provides in relevant part:

The Disbursing Agent shall collect all monies that are to be paid to him, invest them in accordance with Section 345 of the Bankruptcy Code and distribute the said monies as provided in this Plan. Upon Confirmation, the Debtors shall assign to the Disbursing Agent their powers under Sections 547 and 548 of the Bankruptcy Code.

In the course of its November 23, 1984 bench ruling on Burnall-Butler Corporation's motion to vacate the appointment of the Disbursing Agent, the Court determined that section 1123(b)(3)(B) of the Code provided authority for the Disbursing Agent to serve as a representative of the estate in this case.

The Court also relied on *In re Roberts Farms, Inc.*, 652 F.2d 793, 797 (9th Cir.1981), reasoning that "utter chaos" would ensue if the Disbursing Agent's appointment were to be ruled void at a point in time when the reorganization plan was well on its way to consummation.

a period of five years.[2] Paragraph 2 provides in full:

> 2. Alla agrees to retain Saltzstein as a consultant for a period of five (5) years from the date hereof for an annual fee of TWENTH [corrected by hand to read "TWENTY" and initialed] THOUSAND DOLLARS ($20,000.00) per year to be paid in semi-annual payments with the first payment due on or before June [amended by hand to read "July" and initialed] 1, 1978 and to be secured by the execution by Alla's subsidiary, Noralla, Inc., and the proper recordation, on or before June [amended by hand to read "July" and initialed] 1, 1978 in favor of Saltzstein of a security interest on the facility owned by Noralla, Inc., at St. Paul, Virginia which will be subordinated only to the existing security interests on the facility on the date hereof. Alla shall have the right to prepay said fees at any time. Saltzstein agrees to provide such advice and consultation as Alla shall request from time to time during the term hereof regarding international business transactions and affairs of Alla. As founder's compensation, said fees shall on the death of Saltzstein be paid as specifically directed by his Last Will and Testament, and failing such specificity, to the residuary beneficiary of his personalty.[3]

Thus, Saltzstein was to be paid $100,000.00 in payments of $20,000.00 annually and in turn was to provide consulting services upon Alla's request.[4] The first payment of $20,000.00 was received on August 2, 1978, and subsequent payments were received on July 17, 1979 and July 16, 1980. The fourth payment, the one the Disbursing Agent seeks to avoid as a preference, was made by a check dated August 10, 1981, and paid by the drawee bank on August 13, 1981. The amount of the transfer—$20,403.56—reflects the fourth payment plus a late charge. Alla filed its petition in bankruptcy before the fifth payment fell due.

■ The facts present a prima facie preference. Section 547(b) sets forth the five conditions that must be met before a transfer can be avoided:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

2. In numbered paragraph 1, Knop agreed to buy Saltzstein's ownership interest in Alla for $100,000.00 in the form of a promissory note to be paid over the same period of five years in $20,000.00 annual installments.

3. In the remaining numbered paragraphs of the agreement, Knop agreed to assume Saltzstein's liability as an endorser or guarantor of Alla's corporate liabilities (paragraph 3); Saltzstein agreed to resign as treasurer of Alla (paragraph 4); Saltzstein was given the option to remain serving as a director of Alla and Noralla (a subsidiary of Alla's) (paragraph 5); Saltzstein was given the option to determine for a period of five years whether his and Knop's law firm, Wyatt and Saltzstein, would serve as general counsel to Alla, Noralla, and affiliated coal companies (paragraph 6); Alla agreed to pay Saltzstein a bonus for his services for the fiscal year ending March 31, 1978 equal to the greater of $25,000.00 or fifty percent of Knop's bonus for that same year (paragraph 7); Alla agreed to allow Saltzstein to use its condominium in St. Croix, Virgin Islands rent free for three weeks every year (paragraph 8); Saltzstein was given the option of offering Alla business opportunities in return for mutually agreeable compensation (paragraph 9); and Saltzstein was promised a bonus if he continued to participate in Noralla's affairs and "the value of the stock interest of Alla in Noralla" appreciated (paragraph 10). The final paragraph of interest (paragraph 12) states that "[t]his Agreement shall be binding on and insure to the benefit of the heirs, successors and assigns of the parties hereto."

4. Although paragraph 2 calls for semi-annual payments of the annual fee, Alla made and Saltzstein accepted annual payments during the performance of the agreement.

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). These five conditions are satisfied in the case at hand. The $20,403.56 transfer was (1) made directly to Saltzstein, who was a creditor; (2) for or on account of a debt that even Saltzstein agrees was incurred before the transfer was made; (3) made while the debtor was insolvent[5]; (4) made on August 13, 1981, within ninety days before the filing of the bankruptcy petitions on November 6, 1981; and (5) such that it enabled Saltzstein to receive more than he would have received in a chapter 7 liquidation if the transfer had not been made.[6]

Although there is no serious dispute that the elements of a preference have been satisfied in the case at bar, Saltzstein argues nevertheless that the transfer should not be avoided. In his motion to dismiss, Saltzstein claims that the Disbursing Agent's action is barred by the two-year statute of limitation found in section 546(a) of the Code. In his opposition to the Disbursing Agent's motion for summary judgment, Saltzstein raises the "ordinary course" defense of section 547(c)(2).

I. *Motion to Dismiss: Statute of Limitation*

Saltzstein filed a motion to dismiss the Disbursing Agent's action that was argued on June 12, 1985. The material issue raised by the motion is whether the two-year limitation period of section 546(a) of the Code bars the avoidance action. Section 546(a) provides:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Saltzstein argues that the two-year period of limitations began running on November 6, 1981, the date AOV Industries, Inc., et al. ("AOV") filed for reorganization and became debtors-in-possession under chapter 11 of the Code. Although section 546(a)(1) refers to "the appointment of a trustee" and no trustee has been appointed in this case, Saltzstein reasons syllogistically that the two-year period nevertheless applies:

A debtor-in-possession in a chapter 11 case is subject to all the limitations, including that of section 546(a)(1), imposed on a trustee.

The Disbursing Agent is an agent of the debtor-in-possession in this chapter 11 case.

Therefore the Disbursing Agent is subject to the same limitations as a chapter 11 trustee.

Since the Disbursing Agent filed his complaint on October 5, 1984, more than two years after November 6, 1981, the complaint is clearly time-barred, concludes Saltzstein.

In opposition, the Disbursing Agent maintains that if section 546(a)(1) of the

---

**5.** The Court decided this issue after hearing oral argument on the Disbursing Agent's motion for summary judgment. Saltzstein offered no evidence to rebut the presumption of insolvency provided by section 547(f) of the Code.

**6.** In its Order Confirming Amended Plan dated June 30, 1983, the Court found that in chapter 7 liquidation the debtors' assets would have been worth approximately $4,908,000.00, administrative and priority expenses would have equalled approximately $8,920,000.00, and general unsecured claims would have equalled approximately $29,543,000.00. Order Confirming Amended Plan, paragraphs 8 and 9.

Code is applicable, the two-year period began running from the date of his appointment, June 30, 1983. He reasons that he is not an agent of the reorganized debtor "but, like a trustee, acts independently of the reorganized debtor." As a result, the Disbursing Agent believes that he should be considered a trustee for the purposes of computing the two-year limitation period of section 546(a)(1). In the alternative, the Disbursing Agent argues that the two-year period has no application unless in fact a trustee is appointed under section 1104. Since no such trustee has been appointed, the Disbursing Agent asserts that section 546(a)(2) allows him to institute preference actions at any time until the debtors' consolidated case is closed or dismissed. By either of the Disbursing Agent's arguments, the complaint at issue here would be timely filed.

In support of his position Saltzstein asserts a two-part argument, first citing section 1107 of the Code, which states that "[s]ubject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter." 11 U.S.C. § 1107(a). According to the legislative history, "[t]his section places a debtor in possession in the shoes of a trustee in every way.... He is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes." S. Rep. No. 95–989, 95th Cong., 2d Sess. 116 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5902. *See also* Bankr. R. 9001(10) (when the word "trustee" appears in the Bankruptcy Rules, it includes a debtor-in-possession in chapter 11). As a further basis, Saltzstein asserts that the Disbursing Agent stands in the shoes of the debtors-in-possession and is subject to the same limitations, and cites the language of the reorganization plan: "Upon Confirmation, the Debtors shall assign to the Disbursing Agent their powers under Section 547 of the Bankruptcy Code." This second basis depends totally on the existence of the first assertion. If the debtors-in-possession do not stand in the shoes of a trustee with respect to the limitation found in section 546(a), then the Disbursing Agent cannot be subject to that limitation.

Saltzstein cites *In re Korvettes, Inc.,* 42 B.R. 217 (Bankr. S.D. N.Y.1984) in support of his argument. Although the *Korvettes* court did grant the defendant's motion to dismiss the plaintiff's preference action under Federal Rule of Civil Procedure 12(b)(6), it did not adopt the proposition that a chapter 11 debtor-in-possession must file avoidance actions within two years of filing bankruptcy. 42 B.R. at 222–23. The court also rejected a literal reading of section 546 that would expose creditors, unless a trustee is appointed, "to the commencement of suits to avoid preferences even after entry of an order of confirmation until the case is closed, whenever that amorphous moment should occur." *Id.* at 220. Instead, the court fashioned its own rule: the debtor-in-possession should be allowed to bring preference actions until the plan of reorganization is confirmed or until two years have elapsed from the date of the order for relief, whichever period is longer. *Id.* at 222–23. If the *Korvettes* rule is followed by this Court, the Disbursing Agent's claim is time-barred because the plan was confirmed within two years of the filing of the chapter 11 petition and the preference action was filed outside of the two-year period.

*Korvettes* represents an extreme view. Other courts presented with the question have read section 546(a) literally and held that the two-year statute begins to run only when a trustee is appointed. *Matter of Choice Vend, Inc.,* 49 B.R. 719, 720 (Bankr.D.Conn.1985); *In re One Marketing Co., Inc.,* 17 B.R. 738, 739 (Bankr. S.D. Texas 1982); *see In re Black & Geddes, Inc.,* 35 B.R. 827, 828–29 (Bankr. S.D.N.Y. 1983); *Matter of Killian Construction Co., Inc.,* 24 B.R. 848, 850 (Bankr. D.Idaho 1982). In *Choice Vend, supra,* the court states that "the *Korvettes* ruling amounts to an intrusion of the legislative function, a

judicial amendment of a statute." 49 B.R. at 721. The editors of *Collier on Bankruptcy* have commented that "section 1107(a), which gives the debtor powers of a trustee and subjects the debtor in possession to the limitations placed on a trustee, does not equate service of the debtor in possession with the appointment of a trustee for the purposes of section 546(a)." 4 *Collier on Bankruptcy* ¶ 546.02[2], at 546–9 (15th ed. 1985). According to *Collier, Korvettes* "is obviously wrong and reads into section 546 a limitation that is not there." *Id.* at 546–9 n. 9.

Besides pointing out the shortcomings in Saltzstein's argument, the Disbursing Agent counters with two arguments of his own. First, he contends that the two-year limitation applies only if a trustee is appointed under one of the Code sections specifically enumerated in section 546(a)(1). Second, he contends that if the two-year limitation does apply, it began running on June 30, 1983, when the Disbursing Agent was appointed, not on November 6, 1981, when the bankruptcy petitions were filed.

The first argument finds support from chapter 7 cases holding that the two-year period begins running only after a permanent trustee is appointed under section 702 of the Code. *See, e.g., In re Sin-Ko, Inc.,* 48 B.R. 180, 181 (Bankr.N.D.Ohio 1985). The period is tolled during the service of the interim trustee because the interim trustee's job is merely to protect the assets until a permanent trustee is appointed. 48 B.R. at 181. *See also In re Black & Geddes, Inc.,* 35 B.R. 827, 828–29 (Bankr.S. D.N.Y.1983); *Matter of Killian Construction Co., Inc.,* 24 B.R. 848, 850 (Bankr. D.Idaho 1982). To the extent that these cases are applicable in chapter 11, where debtors often remain in possession of their assets and conduct their affairs without the intervention of a trustee, they support the Disbursing Agent's argument. However, the Court finds it unnecessary to adopt what would be an extreme position by applying the *Sin-Ko* rule to the instant matter. The Disbursing Agent's second argument provides an acceptable alternative position.

Although the Disbursing Agent is a "representative of the estate" appointed under section 1123(b)(3)(B) of the Code and the Amended Plan of Reorganization rather than a trustee appointed under section 1104, he argues persuasively that he should be treated like a trustee for the purposes of section 546(a): like a chapter 11 trustee, the Disbursing Agent is an "independent representative of the estate"; and like a chapter 11 trustee, the Disbursing Agent should be allowed two years after his appointment in order to bring suit to set aside and recover preferential transfers. The same policy considerations apply to the Disbursing Agent's case as to a chapter 11 trustee's, asserts the Disbursing Agent. The debtor-in-possession may have no incentive to avoid preferential transfers, he being the one who made those transfers. Furthermore, the debtor may not wish to take money out of the pockets of those with whom he must do business during and after the reorganization. *See Matter of Joyanna Holitogs, Inc.,* 21 B.R. 323, 325 (Bankr. S.D.N.Y.1982). If the two-year period were to begin running from the date of the order of relief, it could expire before an independent trustee is appointed. *In re One Marketing Co., Inc.,* 17 B.R. 738, 739–40 (S.D. Texas 1982). Such a result would be detrimental to creditors. 17 B.R. at 739–40.

To sustain Saltzstein's position would be to establish that a debtor-in-possession has only two years from the filing of a petition under chapter 11 in which to pursue preference actions. This result would contradict the plain meaning of the statute. The Court finds that the Disbursing Agent stands in the shoes of a trustee for the limited purposes of section 546(a). Since the Disbursing Agent filed the instant preference action well within the two-year period beginning on the date of his appointment, Saltzstein's motion to dismiss must be denied.

II. *Motion for Summary Judgment: "Ordinary Course" Defense*

Federal Rule of Civil Procedure 56, made applicable to this proceeding by Bankrupt-

cy Rule 7056, governs the Disbursing Agent's motion for summary judgment. The movant must prevail if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Following oral argument, the Court granted partial summary judgment in favor of the Disbursing Agent on two issues. The remaining issue is whether section 547(c)(2) of the Code applies to prevent the Disbursing Agent from avoiding the transfer of $20,403.56. Section 547(c)(2) contains the "ordinary course" defense to preferential actions:

(c) The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2). Since the facts of the case demonstrate the existence of all the conditions required by section 547(b) for a preference, the Disbursing Agent's motion should be granted if Saltzstein fails to establish the ordinary course defense.

In order to avoid summary judgment, it is incumbent upon Saltzstein to show that all four subparts of section 547(c)(2) have been satisfied. If he fails "to establish or to create a genuine issue of material fact as to any one of the four elements, the affirmative defense [of section 547(c)(2) ] is unavailable to [him]." *In re Auto-Train Corp.*, No. 80–00391, Adv.Pro. No. 82–0187, slip op. at 4 (Bankr.D.D.C. Feb. 3, 1983).

■ Saltzstein has provided nothing more than "general conclusory assertions" to meet the requirements of section 547(c)(2)(A), (C), and (D). *See Auto-Train,*

*supra,* slip op. at 6. He has offered no evidence to show that he or others like him had previously entered into similar agreements with the debtors to provide business consulting services. *See In re Economy Milling Co., Inc.,* 37 B.R. 914, 922 (D.S.C. 1983). Absent such evidence, it cannot be shown that "the debt was incurred and the payments made in the ordinary course of the debtor's and creditor's business according to ordinary business terms." *Id.* at 921–22. Congress enacted section 547(c)(2) to protect ordinary trade credit transactions. *Auto-Train, supra,* slip op. at 6. The debt to Saltzstein for consulting services and/or founder's fees certainly was not one of "those normal [business] transactions which open and close within 45 days" that are protected by section 547(c)(2). *Barash v. Public Finance Corp.,* 658 F.2d 504, 510 (7th Cir.1981).

Saltzstein has concentrated his efforts on attempting to prove that the $20,403.56 transfer was made within 45 days of the date it was incurred. 11 U.S.C. § 547(c)(2)(B). Satisfying the 45–day requirement alone is insufficient to establish the ordinary course defense. Even if it were, however, Saltzstein has neither satisfied section 547(c)(2)(B) nor raised a genuine issue of material fact.

■ According to Saltzstein, the August 13, 1981 transfer of $20,403.56 was on account of a $20,000.00 debt incurred July 1, 1981, instead of on account of a $100,000.00 debt incurred May 19, 1978. This was so, Saltzstein reasons, because the five-year contract was a "mutually binding executory contract: AOV [Alla] had the right not to pay [Saltzstein] his $20,000 annual fee if he did not stand ready to provide the international consulting advice" required under paragraph 2 of the agreement. Saltzstein asserts that if on any July 1 during the relevant five-year period he was not ready to provide his services as a consultant, Alla's obligation to pay that year's fees would not arise. By this reasoning, the debt for 1981 did not arise until July 1 arrived and Saltzstein stood ready to per-

form. Saltzstein concludes that since the international business consulting services were contracted for in the ordinary course of the debtor's business as an international coal dealer and since the 1981 payment was made by delivery of check on August 10, within 45 days of July 1, the 1981 installment was not a preference.[7]

Saltzstein's argument is without merit when we examine the entire agreement between Saltzstein and Alla. If Saltzstein and Knop, both experienced attorneys, had intended to create a year-to-year employment contract expressly contingent on Saltzstein's availability and willingness on July 1 of each of five years to provide consulting services, it would have been simple for them to have done so. However, the agreement embodied in paragraph two of the May 19, 1978 agreement includes, in addition to the provision for "an annual fee" for consulting services, provisions for a security interest in favor of Saltzstein in a facility owned by one of Alla's subsidiaries, a "right to prepay said fees at any time," and a right to receive "said fees" as "founder's compensation ... [to] be paid [on Saltzstein's death] as specifically directed by his Last Will and Testament, and failing such specificity, to the residuary beneficiary of his personalty." When coupled with the fact that Knop, on behalf of Noralla Corporation, executed a promissory note for $100,000.00 to Saltzstein's order "pursuant to Paragraph Numbered 2 of an Agreement dated May 19, 1978," the agreement embodied in paragraph two of the May 19, 1978 agreement becomes much more than a bare employment contract.

The Disbursing Agent argues that a $100,000.00 debt was incurred on May 19, 1978 pursuant to paragraph two of the agreement. This argument appears to represent the intent of the parties to the May 1978 agreement as revealed by the agreement itself. Clearly, Saltzstein intended to receive the entire $100,000.00 whether he was able to provide the consulting services

or not. If Saltzstein were alive each year, the installments were to be for "services"; if he were not alive and able to render such services, the installments were to be "founder's fees" due and payable into his estate. In fact, the only way to have defeated Saltzstein's right to receive the entire sum of $100,000.00 would have been for Saltzstein to refuse to provide consulting services if requested to do so during the five-year term of the agreement. Saltzstein's obligation to serve as a consultant was at most a condition subsequent to the agreement. Alla's contractual liability to pay Saltzstein arose in 1978 when the agreement was executed. The possibility that Saltzstein might later waive his right to perform and be paid did not alter the date when Alla's original contractual liability became fixed. *Cf. Kallen v. Litas*, 47 B.R. 977, 982–83 (N.D. Ill.1985) (when the debtor signed a contingent fee retainer agreement with his attorneys, a provable claim arose even though the existence and amount of the debt remained to be determined; payments received by the attorneys during the preference period were avoidable transfers on account of an antecedent debt).

In *Auto-Train, supra*, the Court stated that "[a] debt is incurred when the debtor first has any liability to the creditor; when the debtor is invoiced or when payment is actually 'due' is not material to the issue of when the debt was 'incurred.'" Slip op. at 4. *See also In re Iowa Premium Services Co., Inc.*, 695 F.2d 1109, 1111 (8th Cir. 1982); *Kallen v. Litas, supra*, 47 B.R. at 982–83. Therefore, if the debt were incurred in 1978, it would be irrelevant that the payment for 1981 was due on July 1, 1981. In the case at bar, the evidence establishes that the liability was incurred in 1978. A new debt is not incurred each time an installment payment is due under a long term contract. *Barash v. Public Finance Corp.*, 658 F.2d 504, 510–11 (7th Cir.1981).

---

**7.** Saltzstein does not claim that he actually provided consulting services under the May 1978 agreement. He claims only that he provided

valuable services to Alla before that agreement was executed.

The Disbursing Agent claims that the promissory note establishes an obligation to pay independent of the agreement pursuant to which it was issued. Saltzstein, of course, denies that the note has such an effect. However, under the present posture of the factual situation, it is not necessary for the Court to determine this issue. The mere existence of the note, along with the above-mentioned provisions of paragraph two and the other paragraphs of the May 19, 1978 agreement, provide convincing proof that the August 13, 1981 transfer to Saltzstein was made on account of a debt incurred over three years earlier.

■ Inferences to be drawn from the facts adduced in a summary judgment motion should be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, at present, light favorable to Saltzstein is difficult to find. After the debtors filed for reorganization, Saltzstein filed a Proof of Claim for the fifth and final installment of $20,000.00 due under the agreement. This action would be proper if the debt arose pre-petition. However, following the argument Saltzstein has asserted in the instant action, the debt for the final installment did not arise until July 1, 1982 and covered a period of time post-petition. In addition, although filing a proof of claim is not tantamount to admitting that the underlying debt was incurred pre-petition, there is such an admission in evidence. In a letter responding to the Disbursing Agent's demand letter for return of the $20,403.56 transfer, Stephen M. Feldman, Saltzstein's attorney, stated:

> As of May 19, 1978, Alla-Ohio owed Mr. Saltzstein $100,000.00. The payment of August, 1981 which Mr. Pearlstein [sic] has questioned as a voidable preference in fact is not a voidable preference, but a payment received subsequent to an antecedent debt incurred more than three years prior to the August, 1981 payment in question.

Letter from Stephen M. Feldman to Alan S. Tenenbaum (March 29, 1984). This admission is binding against Saltzstein as a statement by his agent concerning a matter within the scope of his agency. Fed.R. Evid. 801(d)(2)(D). The fact that the admission is contained in a letter rather than in a response to a request for admissions pursuant to Federal Rule of Civil Procedure 36 does not make the admission ineligible for consideration on a motion for summary judgment. 6 *Moore's Federal Practice* ¶ 56.11 [1.–5], at 56–201 (2d ed. 1985).

■ The arguments and documents presented by Saltzstein and the Disbursing Agent present no disputes of material fact. Twenty thousand dollars of the August 13, 1981 transfer is avoidable as a matter of law. The remaining $403.56 is not preferential since it represents a late charge that was paid within 45 days of the date it was incurred. The $403.56 is rent for the debtor's use of the 1981 installment of $20,-000.00 after the date it was due. *See In re Iowa Premium Service Co., Inc.*, 695 F.2d 1109, 1111–12 (8th Cir.1982); *In re Faller*, 42 B.R. 593 (Bankr. N.D.Ohio 1984); *Matter of R.A. Beck Builder, Inc.*, 34 B.R. 888 (Bankr. W.D.Pa.1983); *In re Ken Gardner Auto Sales, Inc.*, 10 B.R. 632 (Bankr. E.D.Tenn.1981). *Contra In re Acme Dunham, Inc.*, 50 B.R. 734, 741–42 (D.Me.1985); *In re Goodman Industries, Inc.*, 21 B.R. 512 (Bankr.D.Mass.1982).

■ Section 550 requires that Saltzstein pay over the $20,000.00 to the Disbursing Agent. In addition to the $20,000.00, Saltzstein is liable for interest running from the date the Disbursing Agent first demanded Saltzstein to return the preferential transfer to the estate. *Auto-Train, supra,* slip op. at 8. The rate of interest is to be determined in accordance with sections 6621 and 6622 of the Internal Revenue Code (26 U.S.C. §§ 6621, 6622). Slip op. at 8–9. Interest at the prevailing market rate, which the above-cited Internal Revenue Code sections reflect, compensates the estate for the use of its money unlawfully retained by a preferred creditor. *See id.* at 9.

An appropriate order will enter.